ARCH MINERAL CORPORATION and
Ark Land Company,
Plaintiffs–Appellants,

v.

Manuel LUJAN, Jr., Secretary of the Interior, and Barry A. Williamson, Director, Minerals Management Service, U.S. Department of the Interior, Defendants–Appellees.

No. 89–8037.

United States Court of Appeals,
Tenth Circuit.

Aug. 16, 1990.

Bruce A. Salzburg of Herschler, Freudenthal, Salzburg, Bonds & Rideout, P.C., Cheyenne, Wyo., for plaintiffs-appellants.

Ellen J. Durkee, Atty., Dept. of Justice, Washington, D.C. (Donald A. Carr, Acting Asst. Atty. Gen., Richard A. Stacy, U.S. Atty. and Carol A. Statkus, Asst. U.S. Atty., Cheyenne, Wyo., Charles W. Findlay and John A. Bryson, Attys., Dept. of Justice, Washington, D.C., of counsel, Susan K. Hoven, Office of the Solicitor, Dept. of the Interior, Washington, D.C., with her on the brief), for defendants-appellees.

Before HOLLOWAY, Chief Judge, McWILLIAMS, Circuit Judge, and BABCOCK, District Judge.*

McWILLIAMS, Circuit Judge. ·

Arch Mineral Corporation and its wholly owned subsidiary, Ark Land Company, hereinafter collectively referred to as Ark, filed the present action in the United States District Court for the District of Wyoming on April 14, 1988, against Donald P. Hodel, then Secretary of the Interior, and William

* Honorable Lewis T. Babcock, United States District Judge, for the District of Colorado, sitting by designation.

D. Bettenberg, Director, Mineral Management Service, United States Department of the Interior. Ark had certain coal leases with the United States, and by its suit sought to enjoin the Secretary from taking any further administrative or judicial action to collect "readjusted" rents and royalties allegedly due the United States on those leases. The Secretary filed an answer and a counterclaim in which he sought judgment against Ark for underpaid rents and royalties on the several coal leases in the sum of approximately $5,000,000.

Both parties filed motions for summary judgment. The district court denied Ark's motion for summary judgment and granted summary judgment in favor of the Secretary on the first three counts in Ark's complaint and dismissed the fourth count. The remaining three counts in the complaint were dismissed without prejudice so that they could be refiled after conclusion of pending administrative hearings, and the court also reserved its ruling on the Secretary's counterclaim pending the resolution of ongoing administrative proceedings. On motion, the district court, pursuant to Fed. R.Civ.P. 54(b), entered a final judgment on counts 1 through 4. Ark appeals.

Although there are basically two, straight-forward issues raised on appeal, considerable background is essential to an understanding thereof. As indicated, Ark held certain leases of federally-owned land from the United States which gave Ark the right to mine and remove coal therefrom. The leases in question were issued pursuant to the Mineral Lands Leasing Act of 1920 (MLLA). 41 Stat. 437 (1920), *amended by* 30 U.S.C. § 201, *et seq.* (1976). MLLA provided, *inter alia*, that the Department of the Interior could grant leases on federal lands for indeterminate terms to private parties to mine and remove coal at a royalty rate to be fixed by the Secretary, such rate, however, not to be less than five cents per ton of coal and subject to the right of the Secretary to readjust the terms and conditions of a lease, including the royalty rate, at the end of each 20–year period following the issuance of the lease.

On August 4, 1976, the Federal Coal Leasing Amendments Act (FCLAA) was enacted by Congress, which amended much of MLLA. Pub.L. No. 94–377, 90 Stat. 1083, 1085 (codified as amended at 30 U.S.C. § 201, *et seq.* (1982)). FCLAA (1976) included a provision that royalty on a coal lease shall be in such amount as the Secretary shall determine, but not less than 12½% of the value of the coal. 30 U.S.C. § 207 (1982).

Ark's leases here involved were entered into in 1961 and 1964. On October 30, 1981, the Bureau of Land Management (BLM) advised Ark that it intended to "readjust" the leases entered into on November 1, 1961, in accord with the provision of FCLAA (1976). The readjusted lease terms were given to Ark on June 11, 1982. Ark resisted any readjustment. A decision by the Wyoming BLM Office, entered on August 12, 1983, dismissing in part and sustaining in part Ark's objections to the readjustment of leases, was appealed to the Interior Board of Land Appeals (IBLA). On appeal, the IBLA, on April 25, 1985, with a single exception which is not here pertinent, affirmed the decision of the Wyoming State Office, BLM. *See Ark Land Co.*, 86 IBLA 153 (1985). In so doing, IBLA held, *inter alia*, that the Secretary's notice of intent to readjust royalty rates was "timely" and further that the provisions of FCLAA (1976) applied to leases entered into prior to the enactment of FCLAA (1976). Also, the IBLA, with the single exception above noted, upheld Ark's challenges to specific provisions of the readjusted leases.

On July 30, 1985, Ark, pursuant to Section 10 of the Administrative Procedure Act, 5 U.S.C. § 701–706 (1988), filed a petition for review of the IBLA's decision of April 25, 1985, and, in addition to asking that the district court vacate the IBLA decision, Ark sought injunctive and declaratory relief prohibiting the Bureau of Land Management from taking "any further action to improperly readjust the terms of the Subject Leases." In particular, Ark challenged the IBLA's holding that Ark had received "timely notice" of BLM's intention to readjust the terms of Ark's 1961 leases

and that FCLAA (1976) applied to leases entered into before 1976. That petition for review will be referred to as Ark I.

On November 13, 1985, the defendants in Ark I answered with a general denial. The defendants did not file any counterclaim, and the fact that no counterclaim was filed in Ark I is the basis for Ark's present argument that the Secretary is now barred from seeking to collect any underpayment of royalties resulting from the so-called readjusted royalty rates on the 1961 coal leases. Be that as it may, proceedings in Ark I were stayed, by agreement, pending disposition in this court of another case involving the same issues.

On April 9, 1987, we filed our opinion in *FMC Wyoming Corp. v. Hodel*, 816 F.2d 496 (10th Cir.1987), *cert. denied*, 484 U.S. 1041, 108 S.Ct. 772, 98 L.Ed.2d 859 (1988). In that case we held that a notice of intent to readjust filed on or shortly before the 20–year anniversary date was timely, and we further held that the provisions of FCLAA (1976) did apply to coal leases entered into prior to the enactment of FCLAA (1976). *See also Coastal States Energy Co. v. Hodel*, 816 F.2d 502 (10th Cir.1987).

Based on our decision in *FMC Wyoming Corp. v. Hodel, supra,* the district court granted the government's motion for summary judgment in Ark I. Ark then appealed that judgment. However, that appeal, by stipulation of the parties, was dismissed on March 31, 1988, after the Supreme Court denied FMC Wyoming Corp.'s application for certiorari in *FMC Wyoming Corp. v. Hodel, supra.*

As indicated, certain of Ark's 1964 coal leases had their 20–year anniversary date on January 1, 1984, and the BLM notified Ark of its intent to readjust those leases in accord with FCLAA (1976) on July 11, 1983. By notices dated October 21 and 25, 1983, BLM tendered Ark the proposed terms and conditions of the readjusted leases. Ark resisted any readjustment and filed timely objections thereto. BLM considered these objections and issued its decision readjusting Ark's coal leases on July 20, 1984. Ark appealed that decision to the IBLA. On review, the IBLA, by decisions entered on December 10, 1985, and, upon reconsideration, on March 11, 1987, again held, *inter alia,* that the notices to readjust were timely and that the provisions of FCLAA (1976) applied to coal leases predating 1976. *See Ark Land Co.*, 90 IBLA 43 (1985) and *Ark Land Co.*, 96 IBLA 140 (1987) (on reconsideration).

One of Ark's 1964 leases was originally entered into by Ark's predecessor on October 8, 1924, and had been readjusted in 1944 and 1964. Prior to October 8, 1984, Ark was given notice of BLM's intent to readjust this particular lease. The BLM, however, was still considering Ark's objections to the readjusted lease as of October 8, 1984. BLM subsequently overruled most of Ark's objections, and, on appeal, on May 13, 1987, the IBLA affirmed, in the main, the BLM. *Ark Land Co.*, 97 IBLA 241 (1987). Again, the IBLA held that the notice to readjust was timely, and that FCLAA 1976 applied to leases entered into prior to 1976.

On July 15, 1987, Ark filed in the United States District Court for the District of Wyoming a petition for review of the IBLA's decisions of March 11, 1987 and May 13, 1987. This petition is referred to as Ark II. The petition in Ark II parallels the petition in Ark I. The Secretary did not file an answer, but did file a motion for summary judgment based on our opinion in *FMC Wyoming Corp. v. Hodel, supra.* No counterclaim was filed in Ark II. After FMC Wyoming Corp.'s application for certiorari was denied by the Supreme Court, Ark II was dismissed in the district court on stipulation.

By way of statutory and general regulatory background, the Secretary of Interior is responsible for leasing federally owned coal lands and for collecting rents and royalties due under the leases. Federal coal leases are issued pursuant to the Mineral Leasing Act of 1920, as amended, 30 U.S.C. § 181 *et seq.* Within the Department of Interior, the Bureau of Land Management has the responsibility for the issuance and readjustment of the leases.

After the BLM issues the leases, the Minerals Management Service (MMS) exercises the Secretary's authority to collect rents and royalties. The lessee is expected to keep records, compute the proper payment, and then remit, as due, proper royalty and rental payments to MMS. MMS randomly audits the lease holders to determine if proper payments have been made. In the event MMS determines that there has been an underpayment, or an untimely payment, notice of a preliminary determination is sent to the lessee for the "purpose of giving the lessee an opportunity to comment or provide additional information that would refute" the preliminary determination. A final order for payment is issued by an MMS officer if, after review of the audit and lessee's submission, MMS still concludes that monies are owed.

A federal coal lessee may appeal the officer's final determination to the Director of the MMS and may thereafter appeal the Director's decision to the IBLA. The IBLA's decision constitutes the Secretary's decision and its final administrative action which may then be challenged in federal district court pursuant to the Administration Procedure Act, 5 U.S.C. § 706. Should the lessee simply refuse to comply with the Secretary's decision, the government may file an action in federal district court to reduce the royalty assessment to judgment.

On January 9, 1987, MMS notified Ark that it proposed to institute an audit of Ark's financial records for the purpose of determining whether Ark was properly computing and paying its coal royalties. As a result of the audit conducted for the period of January 1981 through December 1986, MMS made a preliminary decision that Ark, because of its flawed computation of the gross value of its coal, had failed to pay $5,200,501.29 in royalties on nine leases. By letter of July 31, 1987, MMS notified Ark of the agency's preliminary determination and invited Ark to "comment or provide any additional documentation that would refute [MMS's] preliminary determination." MMS requested Ark "to review the factual information ... and advise this office no later than August 14, 1987, of your concurrence or the specif-

ic reasons for your non-concurrence." The letter further stated that "[t]his letter is to advise you of a potential underpayment of MMS royalties on the referenced leases and should not be interpreted to be an official order to pay."

On the basis of Ark's response to MMS's letter of July 31, 1987, MMS adjusted its preliminary determination and issued an official order, dated January 7, 1988, directing Ark to pay $5,039,635.15 as underpaid rents or royalties. That order advised Ark of its right to appeal to the Director of MMS and of the requirement that Ark make payment or file a surety bond in lieu thereof.

In a letter to MMS on February 3, 1988, Ark challenged MMS's billing on six different grounds. On April 12, 1988, Ark filed a "Statement of Reasons" with MMS in which it alleged six "reasons" for barring collection of the underpaid rents and royalties. In addition, Ark filed with MMS a Motion to Allow Discovery for the purpose of inquiring into all factual matters pertaining to its Statement of Reasons.

While the matter was thus pending before the MMS, Ark, two days after filing its "Statement of Reasons" with MMS, filed the instant case in the United States District Court in the District of Wyoming seeking declaratory judgment and an injunction to enjoin the defendants from taking any further steps to collect the alleged underpayment of royalties.

Specifically, the complaint contained seven counts. The first count alleged that under Fed.R.Civ.P. 13(a) MMS was barred from pursuing any administrative or judicial collection actions because the government had failed to counterclaim for underpaid rents and royalties in Ark I and Ark II. The second count alleged that the Secretary had failed to comply with the Debt Collection Act of 1982, 31 U.S.C. § 3701, *et seq.*, and that he was therefore barred from collecting any unpaid royalties. The third count claimed that collection and assessment of interest or penalties was barred because the Secretary had failed to promulgate regulations pursuant to the Debt Col-

lection Act, 31 U.S.C. §§ 3711, 3717. The fourth count claimed that no interest or penalties for late payment could be collected under the authority of the Federal Oil and Gas Royalty Management Act of 1982, 30 U.S.C. § 1701, *et seq.* Counts 5 and 7 charged that MMS made auditing errors, and count 6 claimed that the statute of limitations had run on the demand for rentals from certain miscellaneous leases.

By way of answer, the Secretary alleged, *inter alia,* that Ark had failed to exhaust its administrative remedies, and in addition, the Secretary counterclaimed for underpaid rents and royalties.

As mentioned at the outset, the district court, on motion, entered summary judgment for the Secretary on the first three counts in Ark's complaint, dismissed count 4, dismissed counts 5, 6, and 7 without prejudice, and reserved ruling on the Secretary's counterclaim. Ark now appeals the district court's final judgment, entered under Fed.R.Civ.P. 54(b), on the first four counts of the complaint.

In granting summary judgment in favor of the Secretary on the first four counts in Ark's complaint, the district judge held, *inter alia,* that the Secretary under the MLLA (1970) and FCLAA (1976) had the authority to collect underpaid royalties and interest and penalties thereon, and further, that at the time of Ark I and Ark II the Secretary's claim against Ark had not yet matured, and therefore did not constitute a compulsory counterclaim under Fed.R. Civ.P. 13(a). We are in accord with the district court's holdings.

On appeal, Ark raises two main issues: (1) Fed.R.Civ.P., 13(a) bars the Secretary from asserting in the present proceeding a counterclaim for allegedly underpaid rents or royalties because the Secretary failed to assert a counter claim in Ark I and Ark II; and (2) the Secretary is acting outside his statutory authority in attempting to collect allegedly unpaid rents and royalties by means of agency action. In connection with the latter, Ark states "that it does not here challenge Interior's authority to collect royalties which have accrued under leases which it administers. Rather, Arch

[Ark] maintains that such collection activities must be brought in the courts, rather than by administrative adjudication." Each of these two issues has bearing on the other, as a resolution of the second issue will assist in determining just when the Secretary's claim for unpaid rent and royalties matured.

Fed.R.Civ.P. 13(a) reads as follows:

**(a) Compulsory Counterclaims.** A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

■ A prerequisite for the application of Rule 13(a), as applied to the instant case, is that "at the time of serving the pleading [an answer] the pleader [the Secretary] has [a claim] against any opposing party [in this case, Ark], ... aris[ing] out of the transaction or occurrence that is the subject matter of the opposing party's [Ark's] claim...." Where a defendant acquires a claim after his answer has been filed it is not a compulsory counterclaim even if it arises out of the same transaction. *Young v. City of New Orleans,* 751 F.2d 794, 801 (5th Cir.1985), quoting 6 C Wright & A. Miller, *Federal Practice & Procedure* § 1411 (1971). The district court held, *inter alia,* that at the time the Secretary was required to file an answer in both Ark I and Ark II he did not have a claim against Ark, and that the counterclaim he has asserted in the present proceeding was acquired after the time the Secretary was

required to answer in Ark I and Ark II. We agree.

Ark's position is that the Secretary's claim against Ark for unpaid rents and royalties matured when the IBLA rejected Ark's claim that the notices of intent to readjust were untimely and that FCLAA (1976) did not apply to pre–1976 leases. Accordingly, Ark argues, a counterclaim should have been asserted by the Secretary in Ark I and II, and, since they were not, they are now barred.

The Secretary's position is that his claims were not matured claims as of the date of the IBLA's decision, that he later instituted the administrative procedures above described to determine whether there had in fact been underpayment, and if so, how much, and that any claim matured when Ark backed off the administrative process and filed the instant proceeding, in which proceeding he did assert a counterclaim. We agree with the Secretary's position.

At the outset we reject Ark's argument that on the date of the IBLA's decision on April 25, 1985, the Secretary had a matured claim against Ark which should have been asserted as a compulsory counterclaim in Ark I, i.e., Ark's petition to review the IBLA's decision of April 25, 1985, and that because such claim was not asserted in Ark I, the Secretary is barred from asserting it in the present proceeding. In accord therewith, we also reject Ark's parallel argument that on the date of IBLA's decision on March 11, 1987, which reconsidered its earlier decision in the same proceeding on December 10, 1985, and on the date of IBLA's decision on May 13, 1987, the Secretary also had matured claims against Ark which should have been asserted as a compulsory counterclaim in Ark II, i.e., Ark's petition to review the IBLA's decisions of March 11, 1987, and May 13, 1987, and that because they were not asserted in Ark II

the Secretary is barred from asserting them in the present proceeding. We do not believe that the Secretary had matured claims on any of those dates.

In support of its argument that on the respective dates of the IBLA decisions the Secretary had a matured claim against Ark, Ark relies on 43 C.F.R. § 3451.2(e) (1986), which provides as follows [1]:

> The readjusted lease terms and conditions shall be effective pending the outcome of the appeal, unless the authorized officer provides otherwise. Upon the filing of an appeal [to the IBLA], the obligation to pay royalties and rentals when due under the readjusted lease shall be suspended pending the outcome of the appeal. However, during the pendency of the appeal, royalties and rentals shall accrue under the readjusted lease terms and shall be payable if the decision is upheld on appeal, plus interest at the rate specified for late payments in Part 3480 of this title.

The foregoing regulation cannot be read in isolation and must be considered along with the entire administrative scheme which governs the Secretary in his efforts to collect rents and royalties, be they readjusted, adjusted, or non-adjusted. In our case, the IBLA by its decisions of April 25, 1985 and March 11, 1987, held that the Secretary had the authority to readjust Ark's leases of 1961 and 1964, which included the authority to raise the royalty rate on Ark's leases. There was no determination of amounts due the Secretary by Ark.

On January 9, 1987, long after any compulsory counterclaim would have had to have been filed in Ark I, the Secretary, through MMS, in accord with applicable regulations, notified Ark that it proposed

---

1. The most recent version of 43 C.F.R. § 3451.2 is different than the provision relied on by Ark. Our decision is not affected by the new language in § 3451.2 (1989). The pertinent part of the 1989 version is as follows:

   (c) The readjusted lease terms and conditions shall become effective on the anniversary date;

   (d) The lessee may appeal the decision of the authorized officer in accordance with the procedure set out in 43 C.F.R. Part 4; and
   (e) Regardless of whether an appeal is filed by the lessee(s), all of the readjusted lease terms and conditions, including, but not limited to, the reporting and payment of rental and royalty, shall be effective on the anniversary date.

to institute an audit of Ark's financial records for the purpose of determining whether Ark was properly computing and paying its coal royalties. An audit was thereafter conducted for the period of January, 1981, through December,. 1986. By letter of July 31, 1987, MMS notified Ark of the agency's preliminary determination that because of Ark's flawed computation of the gross value of its coal it had failed to pay $5,200,501.29 in royalties on nine leases and invited Ark to "comment or provide any additional documentation that would refute [MMS's] preliminary deter-mination." MMS requested Ark "to review the factual information and advise this office no later than August 14, 1987, of your concurrence or the specific reasons for your non-concurrence." This same letter further stated that "[t]his letter is to advise you of potential underpayment of MMS royalties on the referenced leases and should not be interpreted to be an official order to pay."

On the basis of Ark's untimely response, dated August 21, 1987, coupled with further information gathered by MMS, MMS adjusted its preliminary determination and issued an order, dated January 7, 1988, directing Ark to pay $5,039,635.15 in underpaid rents and royalties. This letter issued long after any counterclaim would have had to have been filed in Ark II. This letter explained the factual basis for the determination of the amount due and informed Ark, *inter alia*, of its right to appeal to the Director of MMS. On Febru-

ary 3, 1988, Ark, by letter to the area director, did challenge MMS's billing. On April 12, 1988, it filed with the Director a "Statement of Reasons" why it should not be required to pay any amount and also filed a motion to allow discovery. As above indicated, two days after its letter of April 12, 1988, Ark decided to abandon its right of administrative review and filed the instant case.

In sum, we agree with the district court that as of the time the Secretary was required to respond to Ark's petitions to review the decisions of the IBLA, the Secretary did not have a matured claim against Ark for underpaid rents and royalties.

In the district court, the Secretary also argued that regardless of when his claim against Ark matured, such did not meet the "same transaction or occurrence" test of Rule 13(a). The district court did not rule on this issue.[2] However, it is the Secretary position that Ark I and Ark II involved petitions to review decisions of the IBLA, and the fact that Ark also asked for declaratory and injunctive relief does not change the basic nature of the proceeding, i.e., judicial review of final administrative action. Any counterclaim for underpaid rents and royalties, according to the Secretary, does not "arise out of the transaction or occasion that is the subject matter of the opposing party's [Ark's] claim. ..." Neither of Ark's petitions to review the two IBLA's decisions sets forth a "claim" in the sense that term is used in Rule 13(a), argues the Secretary.[3] As stated, the district

**2.** The district court did recognize the importance of the "same transaction or occurrence" test to a Rule 13(a) analysis. In its final analysis, however, the district court determined that, "the demand payment involved in the instant action, *regardless of whether or not one regards it as flowing from the same transaction or occurrence that formed the basis of Ark I and Ark II,* was not only premature but also dependent upon the outcome of *Ark I* and *Ark II.*" (emphasis added).

**3.** On order of this court the parties filed supplemental briefs addressing the question of whether Rule 13(a) has any application in a proceeding which involves a petition to review a decision of the Secretary of the Interior. Rule 81(a)(4). The Secretary argued that logically Rule 13(a) should not be applied in such a

proceeding, but could find no case bearing directly on the precise matter. Accordingly, we review the matter on the basis it was decided by the district court. In this general connection, however, we direct attention to *Caleshu v. United States,* 570 F.2d 711 (8th Cir.1978). In *Caleshu* a taxpayer brought suit in the United States District Court for the Eastern District of Missouri for a tax refund, and the United States thereafter brought suit against the taxpayer in the United States District Court for the District of Hawaii to reduce unpaid assessments to judgment. The federal court in Missouri ordered the United States to cease prosecuting its collection suit in Hawaii on the ground that the government's suit in Hawaii was a compulsory counterclaim in the Missouri proceeding. The Eighth Circuit reversed the district court and held that the government's collection action in

court did not rule on this "same transaction or occurrence" argument, and, in view of our belief that any claim was premature, we need not here pursue the matter.

 As above indicated, Ark also argued in the district court, as it does here, that the Secretary has no authority to attempt to collect unpaid rents or royalties by means of administrative action, and that it should be restricted to going into court to prove any such claim. As applied to the instant case, this would mean that the Secretary had no authority to conduct an audit of Ark's business records, make a preliminary determination, consider Ark's objections thereto, and hear Ark's appeal to the MMS Director and the IBLA, and that the Secretary should have bypassed that procedure and gone directly to court and had the issue of underpaid rents and royalties thrashed out and resolved in an adversarial proceeding in open court. The district court made short shrift of that argument, as do we. Under the MLLA, the "Secretary of the Interior is authorized to prescribe necessary and proper rules and regulations and to do any and all things necessary to carry out and accomplish the purposes of this Chapter...." 30 U.S.C. § 189. That, to us, is a broad grant of authority. And the collection of royalties and rents is certainly one of the purposes of the Act. We are advised that for decades the Secretary has taken responsibility for royalty and rent collection under the MLLA through administrative procedures similar to those followed in the instant case.

The district court in granting the Secretary's summary judgment upheld the Secretary's authority to impose certain "late charges," i.e., interest and penalties on the underpaid rents and royalties. At the same time the district court reserved ruling on the Secretary's counterclaim. Since there has as yet been no hearing on the Secretary's counterclaim for underpaid rents and royalties, consideration of the question of whether "late charges" can be tacked onto any underpaid rents and royalties is, in our view, premature.

Accordingly, the judgment as it concerns "late charges" is vacated. Otherwise, the judgment is affirmed.

---

Hawaii was not a compulsory counterclaim in the Missouri proceeding. In thus holding, the Eighth Circuit stated that "the nature and purpose of the statutes authorizing government tax collection suits demonstrate Congress's intent that such suits were not to be compulsory counterclaims." In the instant case, the Secretary's elaborate administrative scheme for collecting unpaid and underpaid rents and royalties on coal leases, authorized by Congressional action, also indicates that Rule 13(a) is not to be applied to any claim of the Secretary against Ark.