**MESA OPERATING LIMITED PARTNERSHIP, Plaintiff–Appellant,**

v.

**UNITED STATES DEPARTMENT OF the INTERIOR, Defendant–Appellee.**

No. 92–5241.

United States Court of Appeals, Tenth Circuit.

Feb. 25, 1994.

James P. Denvir (Stephen A. Wakefield and Jerry E. Rothrock, also of Akin, Gump, Strauss, Hauer & Feld, Washington, D.C.; Patrick D. O'Connor and Terry M. Thomas of Moyers, Martin, Santee, Imel & Tetrick, Tulsa, Oklahoma, with him on the briefs) for Plaintiff–Appellant.

William B. Lazarus, Attorney, Department of Justice, Washington, D.C. (Myles E. Flint, Acting Assistant Attorney General; Beverly N. Nash, Lisa K. Hemmer and Robert L. Klarquist, Attorneys, Department of Justice, Washington, D.C.; F.L. Dunn, III, United States Attorney, and Peter Bernhardt, Assistant United States Attorney, Tulsa, Oklahoma; Of Counsel: Peter J. Schaumberg and Geoffrey R. Heath, Office of the Solicitor, Department of Interior, Washington, D.C., with him on the brief) for Defendant–Appellee.

Before SEYMOUR, Chief Judge, SETH and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Plaintiff Mesa Operating Limited Partnership appeals a district court order denying its motion for summary judgment and granting the summary judgment motion of the defendant United States Department of the Interior. Plaintiff argues that defendant's claims for underpayment of royalties are barred by 28 U.S.C. § 2415 because the government failed to file a complaint or counterclaim within the six-year statute of limitations period, and that the district court erred in concluding that plaintiff waived the § 2415 statute of limitations defense by not raising it in earlier litigation in the Western District of Louisiana and the Fifth Circuit Court of Appeals. We review the district court's grant of summary judgment de novo. *Phillips Petroleum Co. v. Lujan,* 963 F.2d 1380, 1384 (10th Cir.1992).

I

Plaintiff is a lessee and royalty payor under numerous oil and gas leases with the

defendant. On February 27, 1987, the Minerals Management Service (MMS), operating under the auspices of defendant, issued an audit demand letter claiming that plaintiff had not paid royalties on certain cost reimbursements that it had collected. The MMS letter ordered plaintiff to perform a self-audit, compute the royalties due, and pay such royalties to defendant by April 20, 1987. Shortly before that due date plaintiff filed an administrative appeal with defendant regarding the letter. Plaintiff argued that the MMS had no statutory authority to order a self-audit or to collect royalties on the designated cost reimbursements. On April 30, 1987, plaintiff requested a stay of the "pay" portions of the February order pending a determination of its administrative appeal. Plaintiff calculated the royalties that would be due under defendant's demand in May 1987. I Appellant's App. 169–72. In July 1987, MMS granted the stay but required plaintiff to post a bond for the amount of royalties and interest that plaintiff would owe in the event that the MMS demand was upheld.[1] On October 7, 1987, defendant issued a final decision denying plaintiff's administrative appeal and affirming the MMS determination that the disputed cost reimbursements were royalty-bearing payments.

Thereafter, on February 22, 1988, plaintiff filed suit for declaratory and injunctive relief in the Western District of Louisiana, challenging defendant's interpretation of the royalty regulations and requesting that defendant be enjoined from collecting royalties on the disputed cost reimbursements.[2] Defendant did not file a counterclaim demanding payment of the royalties but did file a summary judgment motion supporting its interpretation of the royalty regulations; this was granted by the district court. Plaintiff appealed that judgment to the U.S. Court of Appeals for the Fifth Circuit, and on May 15, 1991, the court affirmed the district court's holding that defendant properly interpreted the royalty regulations as applicable to the disputed cost reimbursements. *See Mesa Operating Ltd. Partnership v. Department of the Interior*, 931 F.2d 318 (5th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 934, 117 L.Ed.2d 106 (1992).

When plaintiff did not pay the royalties, the MMS informed plaintiff on September 10, 1992, that if it did not pay the royalties and interest due within ten days defendant would issue a notice of noncompliance pursuant to 30 U.S.C. § 1719, which would expose plaintiff to civil penalties of up to $10,000 per day for knowing failure to make royalty payments as specified in the lease.

Shortly thereafter plaintiff filed the instant case in the Northern District of Oklahoma for injunctive relief and declaratory judgment, arguing that the defendant cannot enforce the MMS administrative order to pay because it failed to file suit or counterclaim against plaintiff at any point during the administrative review process or the Lake Charles litigation, and thus, through inaction, allowed the § 2415 six-year statute of limitations to extinguish defendant's claim.

The parties filed cross motions for summary judgment. The district court held that plaintiff "failed to raise the application of § 2415 in a timely manner, therefore its motion for summary judgment must be denied." II Appellant's App. 530. The court granted defendant's motion but did not make a specific determination as to when the statute ran on the defendant's claims. The court stated "[i]t will suffice, for the purposes of this analysis, to determine that the statute began to run prior to or during the pendency of the Lake Charles litigation." *Id.* at 529.

---

1. Plaintiff's self-audit in May calculated "the royalty and interest that would be due in the event the MMS may lawfully collect royalties on the cost reimbursements which [plaintiff] receives under Section 110 of the Natural Gas Policy Act from its natural gas purchasers" as $1,133,254.98. I Appellant's App. 172. Defendant audited the schedule and adjusted the figure to $1,179,631.30 due to mathematical errors in plaintiff's calculations. *Id.* Defendant then required plaintiff to post a bond in the amount of $1,509,529.88 to represent the "principal plus interest that will accrue through July 31, 1988." *Id.* at 173.

2. The litigation commencing with plaintiff's suit in the Western District of Louisiana and continuing through the subsequent Fifth Circuit appeal has been designated by both parties to this appeal as the "Lake Charles litigation."

## II

Apparently defendant's claim arose from a Federal Energy Regulatory Commission (FERC) order establishing allowances for gas production-related activities. The FERC order was to be retroactive to July 25, 1980, and eligibility criteria were defined in February 3, 1983 orders, see 48 Fed.Reg. 5178, 5190 (Feb. 3, 1983), with a final order effective Oct. 31, 1983. See 48 Fed.Reg. 44,496 (Sept. 29, 1983). Plaintiff apparently received the large majority of reimbursements after the Fifth Circuit upheld the FERC orders in August 1985, see Texas Eastern Transmission Corp. v. FERC, 769 F.2d 1053 (5th Cir.1985), cert. denied, 476 U.S. 1114, 106 S.Ct. 1967, 90 L.Ed.2d 652 (1986), and received the last such payment in February 1987. II Appellant's App. 634, 637. The MMS audit demand letter issued to plaintiff on February 27, 1987.

■ Our recent decision in Phillips Petroleum Company v. Lujan, 4 F.3d 858 (10th Cir.1993), ruled that the statute of limitations commences to run in an action by the government to recover unpaid royalties from oil and gas leases when the government knew or should have known about the deficiency. Id. at 863. The district court's order and judgment recited that the earliest possible accrual date from which to measure the statute of limitations was July 25, 1980, and the parties agreed that the latest date for the commencement of the running of the statute of limitations was between the district court decision in the Lake Charles litigation, August 23, 1989, and the Fifth Circuit's affirmance, May 15, 1991. Order & Judgment of October 15, 1992, II Addendum to Appellant's App. 526 n. 2.

28 U.S.C. § 2415 states in pertinent part that

> every action for money damages brought by the United States ... shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later....

If we were to apply the earliest possible date recited by the district court, July 25, 1980, the six-year statute arguably would have run on some claims by the April 30, 1987, date when plaintiff requested a stay of the "pay" provisions of the MMS audit demand letter. The statute of limitations would have been a defense to payment, and the issue that some of defendant's claims were unenforceable was not raised by plaintiff in either the administrative proceeding or the Lake Charles litigation that followed. We believe principles of claim preclusion, res judicata, operate to bar any defense to payment that could have been raised in the litigation but was not. See, e.g., Nevada v. United States, 463 U.S. 110, 129–30, 103 S.Ct. 2906, 2917–18, 77 L.Ed.2d 509 (1983).

■ If the latest dates agreed upon by the parties are applicable the six-year statute has not yet run. Plaintiff asserts that the statute commenced to run as it received past reimbursements between February 1984 and February 1987, so that the statute has now run on many of the claims. Like the district court, however, we hold that we need not decide the precise date the statute did commence. By filing the administrative appeal challenging plaintiff's liability for the payments, and putting up a bond in July 1987, a time during which the government was entitled to recover under plaintiff's theory and that covered the payments plus interest defendant asserted were due, in order to stay the "pay" order, plaintiff in effect promised to make the payments if it lost the litigation.

■ Plaintiff's suit in district court in the Lake Charles litigation appears to be too late to be considered an appeal from the final administrative decision. But the suit sought injunctive relief against defendant's collection of the royalties. Plaintiff has continued its bond and increased it to cover additional interest, as we understand. See II Appellant's App. 487 (as of July 31, 1992, bond was $2,549,500). Plaintiff having now lost its appeal at all levels, it would seem unjust in the extreme to permit the delay through litigation initiated by plaintiff and supported by a bond sufficient to cover the payments in the amounts claimed by defendant to give plaintiff the cover of the statute of limitations to

avoid payment of the royalties. We know of no authority that would require a separate suit or counterclaim in the circumstances before us, and we agree with the district court that we should not create a procedural trap for the unwary. *Cf. Arch Mineral Corp. v. Lujan,* 911 F.2d 408, 414–15 n. 3 (10th Cir. 1990) (compulsory counterclaim rule inapplicable to unpaid royalties on coal leases).

AFFIRMED.