**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 6, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ROBERT STONE,

     Plaintiff - Appellant,

v.

DEPARTMENT OF AVIATION,
DENVER INTERNATIONAL
AIRPORT and THE CITY AND
COUNTY OF DENVER, a municipal
corporation,

     Defendants - Appellees.

No. 04-1019

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 02-N-1736 (MJW))**

---

David Lichtenstein, Denver, Colorado, for Plaintiff-Appellant.

Jack M. Wesoky, Office of the City Attorney, Denver, Colorado (Cole Finegan, Mindi L. Wright, Office of the City Attorney, with him on the briefs), for Defendants-Appellees.

---

Before **O'BRIEN**, **McKAY**, and **EBEL**, Circuit Judges.

---

**EBEL**, Circuit Judge.

Plaintiff-Appellant Robert Stone worked as a heavy equipment service technician for the City and County of Denver's Department of Aviation at Denver International Airport (collectively, "the City"). In January 2001, the City terminated Stone's employment. Stone challenged his termination, invoking two separate legal mechanisms. First, Stone appealed his termination to the City's Career Service Authority ("CSA"), winning reinstatement and back pay. The City appealed that administrative proceeding in Colorado state court. Second, Stone challenged his termination by filing a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging his termination violated the Americans with Disabilities Act ("ADA"). After receiving a right-to-sue letter from the EEOC, Stone initiated this ADA action in federal court.

The issue presented by this appeal is whether Stone was required to assert his ADA claim as a compulsory counterclaim in the already pending state-court action such that his failure to do so now precludes him from raising that ADA claim in this later federal action. We hold that because Stone had not yet received a right-to-sue letter from the EEOC at the time he filed his responsive pleading in the state-court action, his ADA claim was not a compulsory counterclaim under Colorado law. Therefore, Stone's failure to assert his ADA claim in the state-court action does not preclude him from now asserting his ADA claim in this federal action. Thus, having jurisdiction under 28 U.S.C. § 1291, we REVERSE the district court's decision dismissing this federal action and

2

REMAND this case for further proceedings in the district court.

## I. BACKGROUND

From 1995 until 2001, the City employed Stone at Denver International Airport ("DIA") as a heavy equipment service technician. This position required Stone to have a valid commercial driver's license ("CDL"). Stone lost his CDL in 1997 as a result of his hypertension. From that point through 2000, Stone continued to work at DIA, but he performed only jobs that did not require a CDL. Nevertheless, he officially maintained his original title as a heavy equipment service technician. During this period, Stone suffered additional medical restrictions that further limited his work activities and forced him to take some time off work.

In June 2000, these additional medical restrictions on Stone's work activities were lifted, although his hypertension still prevented him from renewing his CDL. The City, therefore, attempted to transfer Stone to a position as a materials and parts technician, a position that did not require a CDL. However, the supervisor overseeing this other position objected to this transfer, apparently believing that Stone's other medical restrictions, apart from his hypertension, would prohibit him from performing the duties required of a materials and parts technician. The supervisor persisted in this belief despite receiving documentation that indicated that all of Stone's other medical restrictions had been lifted. In late 2000, the City abandoned its attempts to transfer Stone and

3

instead notified him that, as a heavy equipment service technician, he would need to obtain a CDL to remain employed. Stone was unable to obtain a CDL. In January 2001, therefore, the City deemed Stone disqualified for his position as a heavy equipment service technician and terminated his employment.

As a career service employee with the City, Stone was entitled to appeal his termination through the Career Service Authority ("CSA"). See CSA Rules 2-10, 19-10(b). The CSA's rules required that Stone do so within ten days of his receiving notice of his dismissal. See CSA Rule 19-22. The CSA's rules provided that a hearing officer would first consider Stone's claims and then, if requested, the Career Service Board ("Board") could reopen or reconsider the hearing officer's decision. See CSA Rules 2-10(b), 19-41, 19-44. These rules also provided for judicial review of the CSA's decision pursuant to Colo. R. Civ. P. 106.[1]

---

[1] Rule 106(a)(4) provides, in pertinent part:

Where any governmental body or officer . . . exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law:

(I) Review shall be limited to a determination of whether the body or officer has exceeded its jurisdiction or abused its discretion, based on the evidence in the record before the defendant body or officer.

(II) Review pursuant to this subsection (4) shall be commenced
(continued...)

4

Stone did appeal his termination to the CSA, alleging his dismissal violated CSA rules. In particular, Stone alleged that the City–in refusing to transfer him to a position that he was capable of performing and instead terminating him–violated the CSA's rules by discriminating against him on the basis of a disability. See CSA Rule 9-62(f). While the CSA's rules "mirror federal ADA standards," the parties agree that Stone could not have asserted his ADA claim before the CSA. See Stone v. Dep't of Aviation, 296 F. Supp. 2d 1243, 1254 n. 4 (D. Colo. 2003).

In April 2001, the CSA hearing officer ruled in Stone's favor, ordering the

---

[1](...continued)
> by the filing of a complaint. An answer or other responsive pleading shall then be filed in accordance with the Colorado Rules of Civil Procedure.
>
> . . . .
>
> (VI) Where claims other than claims under this Rule are properly joined in the action, the Court shall determine the manner and timing of proceeding with respect to all claims.
>
> . . . .
>
> (VIII) The court may accelerate or continue any action which, in the discretion of the Court, requires acceleration or continuance.

A court reviewing an administrative decision under Rule 106(a)(4) will determine whether the administrative tribunal applied an erroneous legal standard or made a decision unsupported by competent evidence in the administrative record. See City of Colo. Springs v. Givan, 897 P.2d 753, 756 (Colo. 1995) (en banc).

5

City to reinstate Stone as a City employee, pay him back pay for the time he was off work following his termination, and transfer him to a position that did not require a CDL. The Board denied the City's request to reconsider that decision. In July 2001, the City appealed the Board's decision to a Colorado district court pursuant to Colo. R. Civ. P. 106(a)(4).

After being served in that state-court action, Stone filed a charge with the EEOC on August 27, 2001, alleging that the City had violated the ADA by failing to transfer him and instead terminating his employment. On September 17, 2001, one month after filing his EEOC charge, Stone filed his answer in the state-court proceeding.

Stone received a right-to-sue letter from the EEOC on his ADA claim in June 2002, well after Stone had filed his answer in the state-court proceeding, but before the state court had reached judgment in that case. Although Colo. R. Civ. P. 106 would have permitted Stone to assert his ADA claim as a counterclaim in the City's ongoing state-court action seeking review of the hearing officer's decision,[2] Stone instead commenced this separate action in

---

[2] See Colo. R. 106(a)(4)(VI) ("Where claims other than claims under this Rule are properly joined in the action, the court shall determine the manner and timing of proceeding with respect to all claims."); see also Bolling v. City & County of Denver ex rel. McNichols, 790 F.2d 67, 68 & n.1 (10th Cir. 1986) (holding employee should have asserted 42 U.S.C. §§ 1981 and 1983 claims alleging discrimination in Rule 106 proceeding); Givan, 897 P.2d at 754 (considering employee's 42 U.S.C. § 1983 claim, which employee asserted as

(continued...)

6

federal district court, alleging that the City had violated the ADA by failing to transfer him and by terminating his employment. The federal district court, however, granted the City's motion for summary judgment on December 19, 2003, holding that Stone was required, instead, to pursue his ADA claim as a compulsory counterclaim in the earlier state-court action.[3] See Stone, 296 F. Supp. 2d at 1256. The district court, therefore, concluded that principles of res judicata precluded Stone from asserting his ADA claim in federal court. See id. Stone appeals from that decision.

## II. DISCUSSION

### A. Standard of review.

We review de novo a district court's determination that a claim currently asserted in a federal action was actually a compulsory counterclaim in an earlier commenced state-court action, and therefore now barred. Fox v. Maulding, 112 F.3d 453, 457 (10th Cir. 1997); cf. Wilkes v. Wyo. Dep't of Employment Div. of Labor Standards, 314 F.3d 501, 503 (10th Cir. 2002) (reviewing de novo a district

---

[2](...continued)
counterclaim to city employer's appeal under Colo. R. Civ. P. 106(a)(4)). See generally Powers v. Bd. of County Comm'rs, 651 P.2d 463, 464 (Colo. Ct. App. 1982) (noting that "[w]hen a C.R.C.P. 106(a)(4) action is timely filed, public policy requires the joinder of all of the petitioner's claims in one action.").

[3]       In the state-court action, the Colorado district court had affirmed the Hearing Officer's ruling on February 27, 2003. The City appealed that decision to the Colorado Court of Appeals. That proceeding remained pending at the time this appeal was filed.

court's determination that res judicata applies).  In conducting this de novo review, "'[w]e must . . . ascertain what preclusive effect [Colorado] would give its own decision [in the earlier action] before we may know what effect it should be given in the federal court.'"  Fox, 112 F.3d at 456 (quoting Stifel, Nicolaus & Co. v. Woolsey & Co., 81 F.3d 1540, 1544 (10th Cir. 1996)).  This is because "[f]ederal courts must give to state court judgments 'the same full faith and credit . . . as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.'"  Id. (quoting 28 U.S.C. § 1738).

**B.      General principles of res judicata or claim preclusion.**

"Res judicata . . . encompasses two distinct barriers to repeat litigation: claim preclusion and issue preclusion."  Park Lake Res. Ltd. Liab. Co. v. United States Dep't of Agric., 378 F.3d 1132, 1135 (10th Cir. 2004); see also Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 77 n.1 (1984).  It is claim preclusion that is at issue in this case.  "The principle underlying the rule of claim preclusion is that a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not have another chance to do so." Restatement (Second) of Judgments 6 (1982).

Under Colorado law, claim preclusion specifically "bar[s] . . . a second action on the same claim as one litigated in a prior proceeding when there is a final judgment, identity of subject matter, claims for relief, and parties to the

8

action."[4] City and County of Denver v. Block 173 Assocs., 814 P.2d 824, 830 (Colo. 1991). "Res judicata not only bars issues actually decided, but also any issues that should have been raised in the first proceeding but were not." Id. A defendant's failure to assert a counterclaim will preclude him from asserting that claim in a later action if "[t]he counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court."[5] Restatement (Second) of Judgments § 22(2)(a).

Colorado does have a compulsory counterclaim rule, Colo. R. Civ. P. 13. Under Colorado law, then, "[t]he failure to plead a claim properly classified as a compulsory counterclaim bars any later action on the claim." In re Estate of Krotiuk, 12 P.3d 302, 304 (Colo. Ct. App. 2000); see also 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4414 (2d ed. 2002) [hereinafter 18 Federal Practice and Procedure] (noting that "failure to make a counterclaim made compulsory in a state proceeding by state law

---

[4]     In this case, neither party disputes that there was a final judgment in the state-court action, the same subject matter was at issue in both the state and the federal court proceedings, and the parties to both actions were the same. Therefore, we do not specifically address those issues.

[5]     Additionally, the Restatement notes that a defendant may also be required to assert a counterclaim where "[t]he relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action." Restatement (Second) of Judgments § 22(2)(b). In this case, however, the City does not rely on such an argument, but instead asserts that Colorado's compulsory counterclaim rule required Stone to assert his ADA claim in the state-court action.

precludes later action on the claim in federal court," while "[f]ailure to advance a merely permissive counterclaim . . . ordinarily does not preclude a later action").

The dispositive question presented by this appeal, then, is whether Stone's ADA claim was a compulsory counterclaim under Colorado law. If it was, his failure to assert that counterclaim in the state-court action will preclude him from pursuing that claim now in this later federal action. For the following reasons, however, we conclude that under the facts of this case Stone's ADA claim was not a compulsory counterclaim.

### C. Whether Stone's ADA claim was a compulsory counterclaim under Colorado law.

Colorado's rule on compulsory counterclaims provides, in pertinent part, that "[a] pleading shall state as a counterclaim any <u>claim</u> <u>which</u> <u>at</u> <u>the</u> <u>time</u> <u>of</u> <u>filing</u> <u>the</u> <u>pleading</u> the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ." Colo. R. Civ. P. 13(a) (emphasis added).[6] However,"a party need not assert a counterclaim if it has not matured at the time of the pleading, even if it arises from the same transaction or occurrence." In re Estate of Krotiuk, 12

---

[6]     Although we apply Colorado's rule concerning compulsory claims, that rule "is almost identical to" Fed. R. Civ. P. 13(a). In re Estate of Krotiuk, 12 P.3d at 305. Therefore, where "there is no controlling Colorado authority," Colorado courts "may look to federal precedent for guidance in construing the language of the Colorado rule." Id. We may do likewise. Cf. Fox, 112 F.3d at 457 (laying out identical approach for interpreting Rule 13 of the Oklahoma Rules of Civil Procedure).

P.3d at 305; see also Arch Mineral Corp. v. Lujan, 911 F.2d 408, 412 (10th Cir. 1990) (applying Fed. R. Civ. P. 13(a); noting that "[w]here a defendant acquires a claim after his answer has been filed it is not a compulsory counterclaim even if it arises out of the same transaction").

In this case, then, we must determine whether, at the time Stone filed his answer in the state-court action, he had a "matured" ADA claim which he could have asserted against the City. At the time he filed his answer, however, Stone had not yet received a right-to-sue letter from the EEOC on his ADA claim. Without that right-to-sue letter, Stone's ADA claim would have been subject to dismissal by the state court. It seems axiomatic that a party does not have a matured claim, sufficient to be deemed a compulsory counterclaim, if that claim is subject to dismissal because all the conditions precedent to asserting it have not yet occurred. Cf. Local Union No. 11, Int'l Bhd. of Elec. Workers v. G.P. Thompson Elec., Inc., 363 F.2d 181, 183-84 (9th Cir. 1966) (holding that Fed. R. Civ. P. 13(a) did not require union, in action brought by employers, to assert claims arbitrable under collective bargaining agreement, where union was in process of arbitrating those claims and collective bargaining agreement required arbitration before union could seek judicial relief). And while Stone would have been entitled to request a right-to-sue letter 180 days after he had filed his charge with the EEOC, Stone had only just filed his EEOC charge one

month before he had to file his answer in the state-court proceeding.[7] Without the right-to-sue letter, therefore, Stone's ADA claim under these circumstances had not matured by the time he had to file his answer in the state-court action. Therefore, his ADA claim cannot be considered a compulsory counterclaim under Colorado's rule.

The district court, in reaching the opposite conclusion, relied on this court's decision in Wilkes. See Stone, 296 F. Supp.2d at 1254-56. But unlike here, in

---

[7]     The City argues that Stone could have requested that the EEOC issue him an early right-to-sue letter. In fact, the EEOC, at the request of a charging party, can issue a right-to-sue letter before the 180-period has expired, if the EEOC certifies that "it is probable that [it] will be unable to complete its administrative processing of that charge within that time frame." Walker v. United Parcel Serv., Inc., 240 F.3d 1268, 1271 (10th Cir. 2001); see also id. at 1273-74 (upholding that regulation's validity). Nevertheless, Stone did "not have the power to take away EEOC's enforcement authority or to force it to issue early right to sue notices." Id. at 1273; see also id. at 1275-76. The mere possibility that Stone could have obtained an early right-to-sue letter from the EEOC is not sufficient to have made his ADA claim mature only a month after he filed his EEOC charge. Further, we are disinclined to compel a party to relinquish his EEOC remedies in this way, forcing him "to decide whether to file suit without knowing whether the EEOC intends to pursue the action on his . . . behalf," EEOC v. W.H. Braum, Inc., 347 F.3d 1192, 1198 (10th Cir. 2003) (rejecting argument that state statute of limitations should apply to ADA claims), or otherwise to forego the remedies available through the EEOC proceedings. Requiring an employee to relinquish these administrative remedies would "undermine[] the national policy that requires 'employment discrimination claims to be investigated by the EEOC and, whenever possible, administratively resolved before suit is brought in a federal court." Id. at 1199 (quoting Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 368 (1977)). And requiring an employee to abandon his EEOC remedies in order to be able to assert his ADA claim in court would be particularly unfair where, as here, the employee is the defendant in the litigation and would thus have no real choice as to when he had to abandon his EEOC remedies in order to assert his ADA claim in court.

12

*Wilkes* the party precluded from asserting a claim was the <u>plaintiff</u> in the first action. Lorna Wilkes, an employee with the Wyoming Department of Employment ("DOE"), asserted that the DOE had constructively discharged her in violation of Title VII. <u>See</u> 314 F.3d at 502. Wilkes, therefore, filed a charge with the EEOC. <u>See</u> <u>id.</u> at 503. A month later, while that charge was still pending before the EEOC, Wilkes filed a federal action against the DOE, alleging that the DOE had violated the Equal Pay Act; that Wilkes' immediate supervisor had retaliated against Wilkes because she had exercised her right to free speech; and that Wilkes' supervisor had deprived Wilkes of liberty and property without due process. <u>See</u> <u>id.</u> Wilkes and the DOE eventually settled that lawsuit. <u>See</u> <u>id.</u> After the settlement, the EEOC issued Wilkes a right-to-sue letter on her Title VII claim. <u>See</u> <u>id.</u> Wilkes then sued the DOE again, this time alleging Title VII violations. <u>See</u> <u>id.</u>

This court held that res judicata precluded Wilkes's second suit, notwithstanding the fact that Wilkes did not receive her right-to-sue letter on her Title VII claims until after she had settled the first action. <u>See</u> <u>id.</u> at 503-06.

> Wilkes filed her charge of discrimination on March 21, 2000. The 180-day investigation period expired on September 17, 2000. Wilkes accepted the offer of settlement on October 16, 2000. Wilkes could have requested a right-to-sue notice after September 17, 2000, and amended her complaint to add her Title VII claim. Alternatively, Wilkes could have filed her equal pay claim against the Wyoming DOE and then sought a stay in the district court until after completion of the EEOC administrative process. After receiving her right-to-sue letter, Wilkes could have added her Title VII claim to her initial lawsuit by

13

amending her complaint pursuant to Federal Rule of Civil Procedure 15.

Id. at 506.

The critical difference between Wilkes, as well as similar cases from other

circuits,[8] is that Wilkes involved the assertion of claim preclusion against one

---

[8] In Wilkes, 314 F.3d at 505, this court relied upon a number of cases from other circuits. See, e.g., Havercombe v. Dep't of Educ., 250 F.3d 1, 8 (1st Cir. 2001) ("[T]he lack of a right-to-sue letter would not have prevented plaintiff from notifying the court of his allegations of defendants' continuing violations of federal anti-discrimination laws . . . and, if need be, asking for a stay until the EEOC issued him the letter. . . . [W]hen, several weeks before trial, plaintiff did receive the right-to-sue letter, plaintiff could have moved to amend his original complaint to include those allegations."); Woods v. Dunlop Tire Corp., 972 F.2d 36, 41 (2d Cir. 1992) ("[Plaintiff] could have filed her [Labor Management Relations Act] claim and then sought a stay in the district court pending the outcome of her Title VII administrative proceedings. . . . Once administrative review had been completed, [Plaintiff] could have then joined her Title VII claim . . . by amending the complaint . . . ."); Churchill v. Star Enters., 183 F.3d 184, 194 (3d Cir. 1999) ("We believe that district courts are likely to look favorably on applications for stays of [Family and Medical Leave Act of 1993] proceedings while plaintiffs promptly pursue administrative remedies under Title VII . . . ."); Rivers v. Barberton Bd. of Educ., 143 F.3d 1029, 1033 (6th Cir. 1998) (noting that because the plaintiff "filed her [first] complaint more than 180 days after she filed her claim with the EEOC, she had a right under [Title VII] to obtain her [right-to-sue] letter forthwith simply upon request. . . . [The plaintiff] has made no showing why she could not have otherwise obtained the letter, and perfected her Title VII claim from the outset, much less why she failed to do so during the two-year pendency of" her first action); Herrmann v. Cencom Cable Assocs., Inc., 999 F.2d 223, 225 (7th Cir. 1993) ("[T]he employee can sue on his other claims, ask the court . . . to stay the proceedings until the Title VII administrative process is complete, and then if the process does not end in a way that satisfies him amend his complaint to add a Title VII count."); Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 714-15 (9th Cir.2001) ("[W]e now join our sister circuits in holding that Title VII claims are not exempt from the doctrine of res judicata where plaintiffs have neither sought a stay from the district court for the purpose of pursuing Title VII administrative remedies nor attempted to amend their

(continued...)

14

who was the <u>plaintiff</u> in the first action, whereas in this case Stone was the <u>defendant</u> in the first action. A plaintiff's obligation to bring all related claims together in the same action arises under the common law rule of claim preclusion prohibiting the splitting of actions. <u>See, e.g.</u>, Restatement (Second) of Judgments § 24 (addressing claim preclusion principles concerning splitting claims); <u>see also id.</u> at 5-6 (indicating res judicata is a common law doctrine, even though rules of procedure shape this doctrine). Critically, that doctrine requires a plaintiff to join all claims together that the plaintiff has against the defendant <u>whenever during the course of the litigation related claims mature</u> and are able to be maintained. Thus, even if an additional claim does not mature until well after the initial complaint has been filed, the plaintiff nevertheless must seek to amend the complaint to add additional claims as a compulsory claim when the additional claim can be brought.[9]

"One major function of claim preclusion[, then,] is to force a <u>plaintiff</u> to explore all the facts, develop all the theories, and demand all the remedies in the first suit." 18 <u>Federal Practice and Procedure</u> § 4408 (emphasis added). "When a

---

[8](...continued)
complaint to include their Title VII claims."); <u>Jang v. United Tech. Corp.</u>, 206 F.3d 1147, 1149 (11th Cir.2000) ("[P]laintiffs may not split causes of action to bring, for example, state law claims in one suit and then file a second suit with federal causes of action after receiving a 'right to sue' letter."); <u>see also</u> <u>Davis v. Dallas Area Rapid Transit</u>, 383 F.3d 309, 314-16 (5th Cir. 2004).

[9]     <u>See supra</u> n.8.

15

valid and final judgment rendered in an action extinguishes the plaintiff's claim . . . , the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions out of which the action arose." Restatement (Second) of Judgments § 24(1); see also Argus Real Estate, Inc. v. E-470 Pub. Highway Auth., 109 P.3d 604, 609 (Colo. 2005) (applying this test). "The transaction is the basis of the litigative unit or entity which may not be split." Restatement (Second) of Judgments § 24(1) cmt. a. An essential requirement for "[e]quating claim with transaction" is a plaintiff's having "ample procedural means for fully developing the entire transaction in the one action." Id. That includes "considerable freedom of amendment" which the rules of civil procedure provide. Id.

In Wilkes, then, this court noted that a plaintiff waiting on a right-to-sue letter as to one of his claims could either seek a stay in the district court until he receives the right-to-sue letter or instead later amend his complaint once he received the right-to-sue letter. See Wilkes, 314 F.3d at 505-06. The right-to-sue letter is still required before the employee can assert that claim, but his receipt of the right-to-sue letter is anticipated to occur while the first action is pending. This is particularly true, as Wilkes noted, in light of the fact that the plaintiff can always request a right-to-sue letter from the EEOC once the charge has been

16

pending before that agency for 180 days.[10] See Wilkes, 314 F.3d at 506.

Other courts that require a plaintiff in the first action to assert a federal discrimination claim even without a right-to-sue letter from the EEOC do so anticipating that the plaintiff will be able to obtain that letter while the first action remains pending. See Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 63 (1st Cir. 2000) (noting plaintiff received right-to-sue letter two years before court entered judgment in first action and could have easily sought to amend his complaint during that time to include Title VII claim); Havercombe, 250 F.3d at 8 (noting that plaintiff, a few weeks before trial on first action, received his right-to-sue letter on conduct occurring after he had filed first complaint, and he could then have moved to amend his first complaint to add those additional facts); Churchill, 183 F.3d at 191 (noting employee had time after receiving right-to-sue letter to consolidate her first and second actions); Rivers, 143 F.3d at 1033

---

[10]   Legal treatises provide further support for this conclusion:

> The argument that it was not possible to bring all related theories of recovery or demands for relief in a first action may not overcome a claim-preclusion defense if the plaintiff could have made it possible. A contemporary illustration is provided by discrimination claims that can be brought only after initial recourse to an administrative agency. A plaintiff who sues first on a theory that does not require resort to the agency and then sues again after clearing the agency process may find that claim preclusion arises from failure to take readily available steps to ensure that both theories could be tried together.

18 Federal Practice and Procedure § 4409 (emphasis added).

17

(faulting employee for not asserting her discrimination claim during her first action where, at all times during the pendency of that first action, employee could have requested that the EEOC issue a right-to-sue letter because the charge had been pending before the EEOC for more than 180 days); Heyliger v. State Univ. & Community College Sys., 126 F.3d 849, 855-56 (6th Cir. 1997) (faulting employee for not obtaining right-to-sue letter and then seeking to amend first complaint, where plaintiff could have requested right-to-sue letter from the EEOC three years before court decided first lawsuit). This case law indicates, then, that a plaintiff's obligation to assert claims arising out of the same transaction continues throughout the course of the litigation.

By contrast, principles of claim preclusion only oblige a defendant to assert a compulsory counterclaim as required by state law. And the Colorado compulsory-counterclaim rule relevant here requires only that a defendant assert any matured counterclaim in existence at the time the defendant files his initial responsive pleading in that state-court action. That is, Colorado's compulsory-counterclaim rule, Colo. R. Civ. P. 13(a), requires us to look only at one discrete moment in time–the time the defendant files the responsive pleading in which he could first assert his claim–to determine whether that counterclaim should be deemed a compulsory counterclaim. See In re Estate of Krotiuk, 12 P.3d at 305; see also Arch Mineral Corp., 911 F.2d at 412 (applying Fed. R. Civ. P. 13(a)); cf. 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal

18

Practice and Procedure § 1411 (2d ed. 1990) [hereinafter 6 Federal Practice and Procedure].  In this case, at that moment in time, when Stone filed his answer in the state-court action, he did not yet have a right-to-sue letter.  Nor was he entitled to request one.  His ADA claim, therefore, had not yet matured and so could not be considered a compulsory counterclaim.

Colorado's requirement, under Colo. R. Civ. P. 13(a), that we look at only a discrete moment in time to determine if a counterclaim is compulsory, is further supported by considering the rest of that rule's language.[11]  Rule 13 clearly contemplates the situation of a compulsory counterclaim that is not yet mature at the time the responsive pleading is required but which later becomes mature during the pendency of the action:  "A claim which either matured or was acquired by the pleader after serving his pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading."  Rule 13(e).  This language, however, indicates that while the defendant may with the court's permission amend his pleadings to include a counterclaim that has matured, the pleader is not required to do so.  See generally Harbor Ins. Co. v. Continental

---

[11]     Rule 13(a), in relevant part, provides that

[a] pleading shall state as a counterclaim any claim which at the time of filing the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

19

Bank Co., 922 F.2d 357, 360-61 (7th Cir. 1990) (applying Fed. R. Civ. P. 13(e); noting that where court denies litigant permission to assert newly acquired counterclaim under Rule 13(e), litigant "can bring [that] claim as an independent lawsuit"); 6 Federal Practice and Procedure § 1428 (noting "Rule 13(e) is permissive in character. An after-acquired claim, even if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim, need not be pleaded supplementally; the after-acquired claim is not considered a compulsory counterclaim under Rule 13(a) and a failure to interpose it will not bar its assertion in a later suit."). A defendant's failure to assert a permissive counterclaim will not preclude that party from instead raising it as a separate claim in a later action. See Restatement (Second) of Judgments § 22.

We conclude, therefore, that Stone's ADA claim had not matured by the time that Stone filed his answer in the City's state-court action because Stone had not yet obtained, nor was he entitled to demand, a right-to-sue letter from the EEOC on that ADA claim. The ADA claim, thus, cannot be considered a compulsory counterclaim under Colorado law.[12] Stone, therefore, is not precluded

_____

[12]     In light of our conclusion that Stone's ADA claim was not a compulsory counterclaim in the state-court action, we need not consider Stone's other arguments–that his ADA claim did not arise out of the same subject matter addressed in the state-court proceeding; and that, without a right-to-sue letter, the Colorado court would not have had jurisdiction to consider Stone's ADA claim. See Arch Mineral Corp., 911 F.2d at 414-15 (applying Fed. R. Civ. P. 13(a); holding claim was not a compulsory counterclaim because it had not matured and,
(continued...)

from pressing that claim now in this federal action.

### III.  CONCLUSION

For the foregoing reasons, we REVERSE the district court's decision granting the City summary judgment based upon claim preclusion, and we REMAND this case to the district court for further proceedings not inconsistent with this decision.

---

[12](...continued)
therefore, declining to decide whether claim arose from same transaction).