In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-1939

THOMAS WILSON and RANDY BROWN,

*Plaintiffs-Appellants*,

*v.*

WARREN COUNTY, ILLINOIS, MARTIN EDWARDS, THOMAS
CARITHERS, ALBERT ALGREN, RONALD HANSON, MARK
JOHNSON, and DOUGLAS REINERS,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Central District of Illinois.
No. 11-CV-04078 — **Sara Darrow**, *Judge*.

ARGUED APRIL 11, 2016 — DECIDED JULY 18, 2016

Before BAUER and WILLIAMS, *Circuit Judges*, and ADELMAN,
*District Judge*.[*]

---

[*] Of the Eastern District of Wisconsin, sitting by designation.

ADELMAN, *District Judge*. Plaintiffs Thomas Wilson and
Randy Brown bring claims under 42 U.S.C. § 1983 against pri-
vate citizen defendants, Ronald Hanson, Mark Johnson, and
Douglas Reiners, as well as against Warren County, Illinois
and several of its officials including Sheriff Martin Edwards,
Deputy Thomas Carithers, and State Attorney Albert Algren,
referred to as the public defendants. Wilson also brings a Fair
Housing Act ("FHA") claim against the private defendants,
and plaintiffs assert supplemental state law claims. The
claims arise out of an incident in which the private defendants
seized items of plaintiffs' personal property. The district court
dismissed Wilson's FHA claim for failure to state a claim,
granted summary judgment on plaintiffs' § 1983 claims, and
chose not to address the state law claims. Plaintiffs appeal,
and we affirm.

## I. Background

Wilson and Hanson were business partners who got into
a dispute about the ownership of property. On September 14,
2009, Warren County issued a letter relating to real property
occupied by Wilson stating that it had to be cleaned up within
30 days. The County, however, sent the letter to Hanson.
When he received the letter, Hanson, Hanson's lawyer John-
son, and Reiners, photographed the items on Wilson's prop-
erty. This activity upset Wilson, who suffers from various
psychological disorders, causing him to be hospitalized.

Subsequently, a friend of Wilson called Algren and ex-
pressed concern that Hansen, Johnson, and Reiners would re-
turn and take personal property belonging to Wilson. Algren
assured him that they could not do this without a court order

and that, if they returned, Wilson should call the sheriff. Hanson, represented by Johnson, sought an order in state court authorizing him to remove material from Wilson's property but was unsuccessful because the judge was unavailable. Johnson told Algren about the suit but did not disclose his failure to get a court order or when he, Hanson, and Reiners planned to remove material from Wilson's property. On September 26, the private defendants began removing items from Wilson's property. Wilson called the sheriff's department, which dispatched Carithers to the property. Carithers, however, believed that Hanson owned the property and thought that his job was to stand by and observe.

When Carithers arrived, Johnson told him that the private defendants had a legal right to remove property and handed him a stack of what he called court papers. Wilson objected and encouraged Carithers to call Algren. Carithers did not understand the court papers and called Algren, who advised him that if Johnson had the proper papers the private defendants were within their rights. It is unclear whether Algren mistakenly understood Carithers to say that Johnson had a valid court order or whether Carithers misunderstood Algren on that point. In any case, Carithers believed that the private defendants could legally remove items from the property and he stood by as they did so. At this point, Wilson suffered another anxiety attack. In addition to removing Wilson's property, the private defendants removed an item belonging to Brown.

## II. Discussion

**A. FHA claim**

Wilson's FHA claim alleges that the private defendants committed disability discrimination by intentionally attempting to trigger his disability to prevent him from objecting to the removal of property. We review the district court's dismissal of the claim *de novo*, accepting all well-pleaded facts as true and drawing all reasonable inferences in plaintiffs' favor. *Roberts v. City of Chi.*, 817 F.3d 561, 564 (7th Cir. 2016). Dismissal is appropriate where the complaint fails to set forth facts which amount to a plausible claim.

The FHA makes it unlawful to make unavailable or deny a dwelling to anyone because of a handicap, 42 U.S.C. § 3604(f)(1), and to coerce, intimidate, threaten, or interfere with a person's exercise or enjoyment of the rights granted by the FHA, 42 U.S.C. § 3617. To adequately plead a disability discrimination claim under § 3617 and § 3604, Wilson must allege facts suggesting that the private defendants entered his real estate and removed personal property because of his disability. *Bloch v. Frischholz*, 587 F.3d 771, 784 (7th Cir. 2009).[1]

Wilson's complaint fails because it does not plausibly allege that the private defendants acted because of his disability. It alleges that Hanson blamed Wilson for the failure of their business, that Wilson sold a piece of Hanson's machinery for less than they had agreed, and that Hanson believed that Wilson refused to return items that he had taken from

---

[1] A § 3604 plaintiff may also proceed on a disparate impact theory, but Wilson does not do so.

him. R. at 286–87. These allegations suggest that the private defendants were motivated by Wilson's dealings with Hanson rather than by his disability, and that they would have behaved the same regardless of the disability. Wilson argues that the private defendants exploited his disability to prevent him from protesting their removal of his property. But this is not enough to survive a motion to dismiss because it does not raise the inference that the private defendants would not have removed his property if he wasn't disabled.

## B. Section 1983 claims

The district court granted summary judgment to all defendants on plaintiffs' § 1983 Fourth Amendment and due process claims based on the alleged unconstitutional removal of property. We review grants of summary judgment *de novo*, construing the evidence in the light most favorable to plaintiffs and taking all reasonable inferences in plaintiffs' favor. *Carman v. Tinkes*, 762 F.3d 565, 566 (7th Cir. 2014). Summary judgment is appropriate where no reasonable jury could find for plaintiffs based on the evidence in the record. *Id.*

### 1. Private defendants

To succeed on their § 1983 claim, plaintiffs must prove (1) the deprivation of a right secured by the Constitution or federal law and (2) that defendants were acting under color of state law. *Armato v. Grounds*, 766 F.3d 713, 719–20 (7th Cir. 2014) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). For a private actor to act under color of state law he must have "had a 'meeting of the minds' and thus reached an understanding" with a state actor to deny plaintiffs a constitutional right. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970); *see also*

*Hanania v. Loren-Maltese*, 212 F.3d 353, 356 (7th Cir. 2000) (requiring a showing of "a concerted effort between" a private actor and state actor and that a state actor and private actor "reached an understanding to deprive the plaintiff of her constitutional rights"); *Cunningham v. Southlake Ctr. for Mental Health, Inc.*, 924 F.2d 106, 107 (7th Cir. 1991) ("A requirement of the joint action charge . . . is that both public and private actors share a common, unconstitutional goal."). Because § 1983 allows a private actor to be sued as if it were the state and makes state actors potentially liable as well, the state actor must share the private actor's unconstitutional goal in order for a state actor to be acting under color of state law. In other words, "[a] private actor . . . cannot unilaterally convert a state actor's legitimate activity into an illegal act, conferring both constitutional accountability on itself and liability on the state." *Cunningham*, 924 F.2d at 108.

In the present case, plaintiffs fail to present evidence supporting an inference of a meeting of minds between the private and public defendants. No evidence suggests that any of the public defendants knew that the repossession was unlawful or that they shared an unconstitutional goal with the private plaintiffs. Rather, the record indicates that the private defendants, particularly Johnson, misrepresented that a court order authorized them to remove plaintiffs' property. Lying to a state actor in order to induce him to participate in unlawful conduct, however, is the type of unilateral action that does not create private actor liability. *See, e.g.*, *Betts v. Shearman*, 751 F.3d 78 (2d Cir. 2014) (concluding that a claim that plaintiff was arrested based on a false accusation made against him by the private defendant was insufficient to indicate that the private defendant and the arresting officers shared a common

goal of violating plaintiff's rights); *Peng v. Mei Chin Penghu*, 335 F.3d 970 (9th Cir. 2003) (denying private actor liability where there was no evidence that the arresting officer knew that the private actor's allegations were false and that plaintiff was innocent of the charges for which he was arrested). Thus, plaintiffs cannot establish that the private defendants acted under color of state law.

### 2. Public defendants

Plaintiffs' § 1983 claims against the public defendants fail for similar reasons. Plaintiffs must show that the defendants were personally responsible for the deprivation of their rights. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). A defendant is personally responsible "if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent." *Id.* (internal quotations and citation omitted); *see also Jones v. City of Chi.*, 856 F.2d 985, 992 (7th Cir. 1988). This is a mental state requirement and requires plaintiffs to prove more than mere negligence. *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 811 (7th Cir. 2005); *see also Jones*, 856 F.2d at 992–93 (requiring a showing of knowledge or deliberate, reckless indifference). As noted, the evidence doesn't support an inference that the public defendants knew that the private defendants did not have a court order to remove the property. Rather, Johnson misrepresented this matter to Carithers, and some sort of miscommunication between Algren and Carithers during their phone call led to the mistaken belief that the stack of papers Johnson presented included a court order. While Carithers and Algren could have done

more to confirm the existence of a court order, their behavior appears to be no more than negligent.[2]

Plaintiffs also argue that Algren violated substantive due process because under the state-created danger doctrine, he was obliged to protect Wilson from the private defendants' seizure of his property. Due Process does not require a state to protect citizens from private acts unless the state itself creates the danger. *King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007) (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989)). Under the state-created danger doctrine, a plaintiff must prove that (1) the state created or increased a danger to him, (2) the state's failure to protect plaintiff was a proximate cause of his injuries, and (3) the state's failure to protect the individual shocks the conscience. *Id.* at 817–18. Plaintiffs allege that Algren created the danger by advising Wilson's friend that the removal of property required a court order. Plaintiffs contend that this statement amounted to an assurance that Algren would protect Wilson from the private defendants and made Wilson feel sufficiently protected that he left the gate to his property unlocked. Plaintiffs also assert that Algren then failed to protect

---

[2] Plaintiffs' Fourth Amendment and substantive and procedural due process claims against the public defendants also fail for other reasons. Plaintiffs' Fourth Amendment claim fails because plaintiffs do not present sufficient evidence to support the inference that any of the public defendants actively participated in seizing Wilson's property, *see Pepper v. Vill. of Oak Park*, 430 F.3d 809 (7th Cir. 2005), and plaintiffs' due process claims fail because plaintiffs have adequate post-deprivation remedies at state law, *Gable v. City of Chi.*, 296 F.3d 531, 540–41 (7th Cir. 2002) (requiring plaintiff to show inadequacy of state law remedies to succeed on due process claims).

their property, citing Carithers' phone call regarding the legality of the property removal. But this behavior falls short of shocking the conscience. Only "the most egregious official conduct" shocks the conscience, *Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 654 (7th Cir. 2011) (internal quotations and citation omitted), and Algren's act of informing Wilson of a general legal principle—that one needs a court order in order to legally take another's property – does not fall into that category.

Plaintiffs also bring *Monell*[3] claims against Algren and Edwards in their official capacities and against Warren County. But these claims fail because of the absence of an underlying constitutional violation. *Sallenger v. City of Springfield*, 630 F.3d 499, 504 (7th Cir. 2010).

## C. Motion to disqualify counsel

Finally, plaintiffs challenge the district court's denial of its motion to disqualify Johnson, himself a defendant, from representing the other two private defendants. For a lawyer to represent parties in a lawsuit in which he is a defendant is surely a conflict of interest *See* IL RPC 1.7(a) (prohibiting a lawyer from representing a client if the representation involves "a concurrent conflict of interest," including where "the representation of one client will be directly adverse to another client"); IL RPC 1.7 cmt. 10 (stating that "if the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice"). At this point, however, the issue is

---

[3] *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978).

moot. Johnson has apparently been disbarred as a result of his conduct and thus can no longer represent the private defendants. Moreover, the district court's failure to disqualify Johnson was harmless because the issue had no bearing on the merits of plaintiffs' claims.

### III. Conclusion

For these reasons, we AFFIRM.