**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 12, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

VIRGINIA MORGAN,

     Plaintiff - Appellant,

v.

CARRINGTON MORTGAGE
SERVICES; BANK OF AMERICA, N.A.,

     Defendants - Appellees.

No. 17-7014
(D.C. No. 6:16-CV-00060-RAW)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **McKAY**, and **MATHESON**, Circuit Judges.
_____

Virginia Morgan appeals from the dismissal of her claims that Carrington

Mortgage Services and Bank of America, N.A., violated the Fair Housing Act

("FHA"), 42 U.S.C. §§ 3601-3631, the Real Estate Settlement Procedures Act

("RESPA"), 12 U.S.C. §§ 2601-2617, and the Fair Debt Collections Practices Act

("FDCPA"), 15 U.S.C. §§ 1692-1692p, after foreclosing on her home and attempting

to regain possession. These claims are similar to counterclaims and arguments she

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

raised during the state foreclosure action and the following proceedings to confirm the sheriff's sale. Given the similarities, the district court dismissed the entire case on preclusion grounds under Fed. R. Civ. P. 12(b)(6), ruling the claims were decided or could have been decided during the foreclosure action.

To the extent Ms. Morgan predicates her federal claims on events that preceded the filing of her answer in the foreclosure action, they would be barred. But as we understand her complaint, all of her present claims, except part of one, concern events that post-date entry of judgment in the foreclosure proceeding, which prevents application of a preclusion bar. Nonetheless, the claims fail to state a plausible claim for relief. Accordingly, we exercise jurisdiction under 28 U.S.C. § 1291 and affirm dismissal of this case.

## I. BACKGROUND

### A. *State Proceedings*

According to the first amended complaint, the operative complaint here, Ms. Morgan and her husband "obtained a federally related home mortgage loan through [a] now defunct mortgage lender" in 2008. Aplt. App. at 15. In 2009, Bank of America became her loan servicer. Beginning in 2011, Ms. Morgan submitted several applications for mortgage assistance to Bank of America after her husband was laid off from his job. "Each time that she submitted a request for mortgage [assistance] between April 2011 and July 2012, [Bank of America] denied her request on the grounds that she failed to timely return paperwork." *Id.* at 15-16. To the best

2

of her recollection, Bank of America failed to identify which documents were missing from her application.

The amended complaint further alleged that in March 2012, Ms. Morgan, with the help of a mortgage counselor, submitted another application for loss-mitigation to Bank of America.[1] As before, the bank denied her application on the ground that she failed to timely provide the requested paperwork. Ms. Morgan's counselor complained, and the bank allowed her to resubmit the documents. In July 2012, the bank again denied her application on the basis that not all documents had been provided. When the bank discovered that all documents had been provided, it required that Ms. Morgan begin the process again and submit all new documents. Ms. Morgan submitted still another application for mortgage assistance in August 2012, and Bank of America has never informed her of the status of that application.

Instead, on October 9, 2012, Bank of America initiated foreclosure proceedings in Oklahoma state court. In her answer, Ms. Morgan counterclaimed for breach of contract based on Bank of America's alleged failure to follow loss-mitigation procedures. She also counterclaimed for breach of the implied duty of good faith and fair dealing, alleging Bank of America did not "own" the note when it

---

[1] "A loss mitigation application is simply a request by a borrower for any of a number of alternatives to foreclosure, known as loss mitigation options, including, among others, modification of the mortgage." *Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1006 (11th Cir. 2016) (citing 12 C.F.R. § 1024.31)).

initiated foreclosure proceedings.[2]  *See* Aplee. Supp. App. at 304, 330-31, 333-34; *see also* Aplt. Br. at 19, 22.  The state district court dismissed her counterclaims and granted summary judgment to Bank of America on October 4, 2013,[3] which preceded the events giving rise to Ms. Morgan's federal claims.

## B.  *Federal Proceedings*

Ms. Morgan asserted three claims in federal court.

First, Ms. Morgan alleged the defendants had violated the FHA.  Her amended complaint stated that she had filed a disability discrimination complaint with the Department of Housing and Urban Development (HUD) on December 22, 2014, that HUD had notified Bank of America of the discrimination complaint on April 15, 2015, and that Carrington had discriminated and retaliated against her in violation of the FHA by failing to review a March 16, 2015 loss-mitigation request.

Second, she claimed defendants had violated the RESPA.  She alleged Carrington notified her that, effective August 1, 2014, it was the servicer of her now-foreclosed loan.  She further alleged Bank of America then repurchased the

---

[2] The answer is not included in the record on appeal.  We remind counsel that "an appellant who provides an inadequate record does so at [her] peril." *Burnett v. Sw. Bell Tel. L.P.*, 555 F.3d 906, 908 (10th Cir. 2009) (brackets and internal quotation marks omitted).  We have nonetheless endeavored to discern Ms. Morgan's counterclaims based on the information contained in the state district court's docket sheet, the state court of appeals' decision, and Ms. Morgan's appellate brief to this court.

[3] Ms. Morgan asserts the state district court entered summary judgment on October 12, 2013, but the record shows it did so on October 4, 2013.  *See* Aplee. Supp. App. at 306.

property at a sheriff's sale on September 18, 2014, and moved to confirm the sale. This meant, according to the amended complaint, that Bank of America failed to provide timely notice of the transfer of servicing rights and that Carrington failed to review an unspecified loss-mitigation application that was pending before the sheriff's sale and another application that she submitted to Carrington on March 16, 2015.

Third, Ms. Morgan claimed defendants had violated the FDCPA by (1) sending her husband a letter on June 1, 2015, offering all occupants $1,000 to vacate the property; (2) participating in a June 25, 2015 state district court hearing to confirm the sale of the property after agreeing to continue it so her attorney could attend a funeral; and (3) having the sheriff's department serve a writ of assistance that issued on June 29, 2015.

Because Ms. Morgan raised similar issues during the state foreclosure proceedings and post-judgment proceedings to confirm the sheriff's sale, the district court dismissed the suit under Fed. R. Civ. P. 12(b)(6), holding that the amended complaint was precluded because it "is comprised of claims and issues that were actually decided or could have been decided in the foreclosure action." Aplt. App. at 88. The validity of this holding depends on whether Ms. Morgan's federal claims were premised on events that preceded the filing of her answer in the foreclosure action. But as we have explained, Ms. Morgan's claims are based on events that post-date entry of judgment in the foreclosure action. She could not have raised them during those proceedings. Although she asserted one aspect of her FDCPA claim in

5

state court during later proceedings to confirm the sheriff's sale, her appeal of the state court's order confirming the sale is still pending, which prevents the order from having a preclusive effect on her FDCPA claim. Other than the exception mentioned above, Ms. Morgan's claims are not thus precluded, but they are subject to dismissal for failure to state a plausible claim for relief. We affirm on this alternative ground.

## II. **DISCUSSION**

### A. *Standard of Review*

We review de novo a district court's dismissal under Rule 12(b)(6), accepting well-pleaded factual allegations as true and assessing the plausibility of the complaint. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013) (internal quotation marks omitted). "We [also] review de novo the district court's grant of [a] motion to dismiss on issue and claim preclusion grounds." *Campbell v. City of Spencer*, 777 F.3d 1073, 1077 (10th Cir. 2014).

### B. *Analysis*

### 1. **Ms. Morgan's Claims Are Not Subject to Preclusion Analysis**

#### a. *Legal background*

We apply state law to determine the preclusive effect of a state court judgment. *See Fox v. Maulding*, 112 F.3d 453, 456 (10th Cir. 1997); 28 U.S.C. § 1738. In Oklahoma, claim preclusion "teaches that a judgment in an action bars the

6

parties (or their privies) from relitigating not only the adjudicated claim, but also any theories or issues that were actually decided together with those which could have been decided in that action." *McDaneld v. Lynn Hickey Dodge, Inc.*, 979 P.2d 252, 255-56 (Okla. 1999) (emphasis omitted). Claim preclusion generally prohibits the splitting of actions and "'force[s] a *plaintiff* to explore all the facts, develop all the theories, and demand all the remedies in the first suit.'" *Stone v. Dep't of Aviation*, 453 F.3d 1271, 1279 (10th Cir. 2006) (quoting Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 18 Federal Practice and Procedure § 4408).[4]

"By contrast, principles of claim preclusion only oblige a *defendant* [, as Ms. Morgan was in the state foreclosure action,] to assert a compulsory counterclaim as required by state law." *Id.* at 1280. Oklahoma's compulsory counterclaim statute, which tracks Fed. R. Civ. P. 13(a), requires a defendant to state any claim arising out of the same transaction at the time she files her answer:

> A pleading shall state as a counterclaim *any claim which at the time of the pleading* the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

---

[4] *Stone* interpreted Colorado's compulsory counterclaim rules, which, as we explain below, are substantially similar to Oklahoma's compulsory counterclaim statutes and Fed. R. Civ. P. 13(a). Absent controlling Oklahoma authority, we may consult this and other relevant federal authority for guidance. *See Stone*, 453 F.3d at 1276 n.6 (following the same approach); *Fox*, 112 F.3d at 457 (same); *see also McDaneld*, 979 P.2d at 255 n.15 ("Because Oklahoma's compulsory counterclaim requirement . . . parallels exactly the language of [Fed. R. Civ. P.] 13, the case law that interprets the corresponding federal rule of civil procedure is instructive." (emphasis omitted)).

7

Okla. Stat. tit. 12, § 2013(A) (emphasis added). "'Failure to plead a compulsory counterclaim prevents a party from bringing a later independent action on that claim.'" *Valley View Angus Ranch, Inc. v. Duke Energy Field Servs., Inc.*, 497 F.3d 1096, 1103 (10th Cir. 2007) (quoting *Okla. Gas & Elec. Co. v. Dist. Ct., Fifteenth Judicial Dist., Cherokee Cty.*, 784 P.2d 61, 64 (Okla. 1989)).

If, however, a claim matures or a defendant acquires it *after* she files her answer, Oklahoma's after-acquired counterclaim statute permits the defendant to assert her claim by filing a supplemental pleading: "A claim which either matured or was acquired by the pleader after serving [her] pleading may, with the permission of the court, be presented as a counterclaim or a cross-claim by supplemental pleading." Okla. Stat. tit. 12, § 2013(E). This language is permissive, and a defendant who elects not to raise her claim by supplemental pleading will not be barred from doing so in a later suit. *See Stone*, 453 F.3d at 1280-81 (interpreting nearly identical language under Colorado law in light of Fed. R. Civ. P. 13(e)); *see also Arch Mineral Corp. v. Lujan*, 911 F.2d 408, 412 (10th Cir. 1990) (interpreting Fed. R. Civ. P. 13(a) and holding that "[w]here a defendant acquires a claim after his answer has been filed it is not a compulsory counterclaim even if it arises out of the same transaction"). "The rationale for the general rule applying to defendants who elect not to assert a [permissive] counterclaim in the prior action is that 'the defendant should not be required to assert his claim in the forum or the proceeding chosen by the plaintiff but should be allowed to bring suit at a time and place of his own selection.'" *Valley*

8

*View*, 497 F.3d at 1102 (quoting Restatement (Second) of Judgments § 22 cmt. a (1982) (hereinafter "Restatement")).

In addition to the foregoing, "Oklahoma's claim preclusion doctrine bars a claim when (1) the party asserting the claim could have raised it as a defense in the first case, and (2) success on the later claim would nullify the first judgment or impair the rights established in it." *Campbell*, 777 F.3d at 1078; *see Valley View*, 497 F.3d at 1101-02 (recognizing that under such circumstances, a claim is barred if a statute required the defendant to raise her claim in the original action or the defendant's success on her claim in the second suit would nullify the first judgment or impair rights established in that action); *see also* Restatement § 22(2).[5]

b. *Analysis*

Applying these principles, Ms. Morgan's federal claims, with one exception, are not barred because they arose after entry of the state foreclosure judgment on October 4, 2013. *See FDIC v. Tidwell*, 820 P.2d 1338, 1341 (Okla. 1991) (holding that in a foreclosure action, Oklahoma courts consider the final judgment to be "the

---

[5] Section 22(2) states:

> (2)  A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:
> (a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or
> (b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action.

order determining the amount due and ordering the sale to satisfy the mortgage lien"). As Ms. Morgan points out, even if her federal claims arose out of the same transaction at issue in the state foreclosure action, the claims are barred "'only if they could have been maintained at the time when [she] filed [her] answer in state court.'" Aplt. Br. at 17-18 (quoting *Reynolds v. Quarter Circle M Ranch, Inc.*, 24 F. App'x 850, 854 (10th Cir. 2001) (unpublished)).

Although Ms. Morgan's answer in the state foreclosure action asserted a counterclaim based on Bank of America's failure to follow loss-mitigation procedures, her FHA and RESPA claims in federal court are premised on the defendants' failure to review the post-judgment application for loss-mitigation that she submitted on March 16, 2015, long after she filed her answer in December 2012. The only exception is Ms. Morgan's RESPA claim based on the failure to review an unspecified application for loss-mitigation. The last dated loss-mitigation application referenced in the complaint is from August 2012, which was before she filed her answer, so any claim based on that particular application is barred.

As for the FDCPA claim, Ms. Morgan could not have raised this claim in her answer because it is based on events that occurred in June 2015. We recognize that Ms. Morgan raised one aspect of this claim during post-judgment confirmation proceedings when she contested a June 25, 2015 hearing to confirm the sale of the property. But the order confirming the sale has no preclusive effect because Ms. Morgan's appeal from that order is still pending. *See Methvin v. Methvin*, 127 P.2d 186, 188 (Okla. 1942). Nor could she have raised the remaining substantive

10

issues relating to her FDCPA claim during the confirmation proceedings because those proceedings are limited to evaluating the propriety of the sheriff's sale. *See Burton v. Mee*, 4 P.2d 33, 36 (Okla. 1931) ("[T]he scope of inquiry on a motion to confirm sale of real estate . . . is confined to the regularity of the proceedings on the sale, and not as to the regularity of the judgment.").

A successful prosecution of Ms. Morgan's claims would not nullify the foreclosure judgment or impair defendants' rights. Rather, if successful, her claims would provide for damages as permitted by federal law. Consequently, with the one exception noted, Ms. Morgan's federal statutory claims are not barred.

## 2. **Ms. Morgan's Claims Are Subject to Dismissal Under Rule 12(b)(6)**

Although only one part of Ms. Morgan's RESPA claim is barred, all three of her claims are subject to dismissal under Rule 12(b)(6) for failure to state a plausible claim for relief.[6] We discuss each claim in turn and affirm on that ground.

### a. *FHA*

Under the FHA, it is unlawful to discriminate against a "buyer or renter because of a handicap," 42 U.S.C. § 3604(f)(1), or to coerce, intimidate, threaten, or interfere with a person's exercise or enjoyment of any right granted or protected by the FHA, *id.*, § 3617. To state a plausible claim under the FHA, a plaintiff must

---

[6] We may affirm on any alternative ground supported by the record. *Knight v. Mooring Capital Fund, LLC*, 749 F.3d 1180, 1186 (10th Cir. 2014). Defendants raised the Rule 12(b)(6) failure-to-state-a-claim argument in the district court, and Ms. Morgan responded. Defendants reasserted this argument in their response brief to this court, but Ms. Morgan declined to file a reply. Thus, she had an opportunity to address the prospect of dismissal for failure to state a plausible claim for relief.

allege a causal connection between her disability or protected activity and the alleged adverse action. *See Wilson v. Warren Cty.*, 830 F.3d 464, 467-68 (7th Cir. 2016) (affirming dismissal under Rule 12(b)(6) because plaintiff claiming violations of §§ 3604(f)(1) & 3617 failed to plausibly allege that adverse action was "because of his disability").

Ms. Morgan alleged that Carrington became her loan servicer on August 1, 2014, and that she submitted a loss-mitigation application to Carrington on March 16, 2015. She further alleged that HUD notified Bank of America of her disability discrimination complaint on April 15, 2015, and as a result, Carrington discriminated and retaliated against her in violation of the FHA by failing to review the March 16, 2015 loss-mitigation application.

Ms. Morgan fails to plausibly allege causation because she averred that the state district court had already awarded summary judgment to Bank of America in October 2013 and the sheriff's sale occurred in September 2014. Thus, by the time Ms. Morgan sent Carrington the March 16, 2015 loss-mitigation application, it was a year and a half *after* the state district court awarded summary judgment to Bank of America, six months *after* the sheriff's sale, and one month *after* the state court of appeals affirmed the foreclosure judgment. In fact, by the time Bank of America allegedly received notice of the HUD discrimination complaint, the state supreme court had already entered its mandate affirming the foreclosure judgment.

Given this chronology, even if we assume Bank of America notified Carrington of the HUD complaint, it is implausible that Carrington declined to

12

review the successive, untimely application for loss-mitigation options on her loan *because* of Ms. Morgan's alleged disability or protected activity. The loan had long been foreclosed and reduced to judgment 18 months earlier, the property had already been sold, and the foreclosure judgment had been affirmed on appeal. These facts show that Carrington declined to review the March 16, 2015 loss-mitigation application because there was no longer a loan, not because of Ms. Morgan's claimed disability or HUD complaint. *See Wilson*, 830 F.3d at 468 (holding that allegations failed to survive a motion to dismiss where they suggested defendants "would have behaved the same regardless of the disability").

b. *RESPA*

Ms. Morgan claimed Bank of America violated RESPA by failing to provide timely notice of the transfer of servicing rights to Carrington. RESPA requires that such notice be provided "to the borrower not less than 15 days before the effective date of transfer of" servicing rights. 12 U.S.C. § 2605(b)(2)(A). But RESPA provides only for actual damages stemming from a violation of "any provision" of § 2605 and statutory damages arising from a pattern or practice of violations. *Id.* § 2605(f)(1)(A), (B). Thus, to survive a motion to dismiss under Rule 12(b)(6), a RESPA plaintiff must allege actual damages arising from a RESPA violation. *See Toone*, 716 F.3d at 523 (holding that, as required by § 2605(f)(1), to state a claim under a different provision of RESPA, § 2605(e), "plaintiffs must plead actual damages stemming from the failure to respond to requests [for information] or a pattern or practice of misconduct").

13

Ms. Morgan made only the conclusory allegation that she suffered "damages for economic harm, pain and suffering, severe stress and emotional distress." Aplt. App. at 28. These are legal labels, not factual allegations. They fail to "nudge[ her] claim[] across the line from conceivable to plausible." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1144 (10th Cir. 2013) (internal quotation marks omitted). The only factual allegation Ms. Morgan provides is absent from her amended complaint but appears in her opening brief, where she suggests that she was harmed by the lack of notice because she was unable to submit a loss-mitigation application to her true servicer, Carrington, before the sheriff's sale. This assertion appears in a single sentence in the procedural history section of her brief, and fails to preserve the argument. *See Toone*, 716 F.3d at 522. In any event, Ms. Morgan did not allege that she had a pending application with Bank of America before the sale (apart from the August 2012 application, which is subject to claim preclusion), so it is implausible that the alleged lack of notice caused her to be harmed.

Ms. Morgan also claimed Carrington violated RESPA and its implementing regulation by failing to review her March 16, 2015 loss-mitigation application. Under 12 C.F.R. § 1024.41(c)(1), "if a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days," the servicer must evaluate whether the borrower is eligible for any loss mitigation options and notify the borrower of any available options. "But a servicer only has a duty to evaluate a complete loss mitigation application that it receives 'more than 37 days before a foreclosure sale.'" *Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003,

14

1106 (11th Cir. 2016) (quoting 12 C.F.R. § 1024.41(c)(1)).  Ms. Morgan submitted the March 16, 2015 loss-mitigation application six months *after* the sheriff's sale on September 18, 2014.  Thus, Carrington had no duty to evaluate it.

   c.  *FDCPA*

Ms. Morgan claimed that defendants violated the FDCPA.  Under the FDCPA "a debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney."  15 U.S.C. § 1692c(a)(2).  "A 'communication' is defined as the 'conveying of information regarding a debt directly or indirectly to any person through any medium.'"  *Marx v. Gen. Revenue Corp.*, 668 F.3d 1174, 1177 (10th Cir. 2011) (quoting 15 U.S.C. § 1692a(2)).  Ms. Morgan contends defendants violated the FDCPA by making three illegal "communications":  (1) sending her husband a letter on June 1, 2015, offering "[a]ll occupants" $1,000 to vacate the property, Aplee. Supp. App. at 199; (2) participating in the June 25, 2015 confirmation hearing and obtaining a default judgment through fraud;[7] and (3) obtaining a writ of assistance that was issued on June 29, 2015 and having the sheriff's department serve it.  All three theories are meritless.

_____

[7] Ms. Morgan originally claimed defendants violated both the FHA and FDCPA by participating in the June 25 hearing, but her appellate brief abandons the FHA theory and references the June 25 hearing only as a basis for her FDCPA claim, *see* Aplt. Br. at 12.  We confine our analysis accordingly.  *See Bronson v. Swenson*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").

i. June 1, 2015 Letter

The June 1, 2015 letter offered to pay "[a]ll occupants" $1,000 to vacate the property.[8] Aplee. Supp. App. at 199. It indicates defendants acquired the property through a foreclosure sale, but it does not reference any debt, nor does it suggest that Ms. Morgan owed a debt. Instead, it offered a payment. Ms. Morgan asserted that the cover sheet of the letter references a foreclosure case number, but that page simply lists a number after the phrase "BTCC File Number." *Id.* at 198. This file number does not reference a debt, either directly or indirectly—it is merely "a jumble of numbers, designed for internal identification purposes." *Marx*, 668 F.3d at 1183. And even if Ms. Morgan understood the letter to reference the foreclosure, it did not convey any information regarding a debt because the sheriff's sale had already occurred. This part of the amended complaint failed to plausibly state an FDCPA violation.

ii. June 25, 2015 Hearing

The amended complaint does not allege Bank of America conveyed any information regarding a debt at the June 25, 2015 hearing. Rather, the amended complaint focuses on the bank's alleged deceptive conduct—that Bank of America appeared in court and obtained an order confirming the sheriff's sale by default, without disclosing the parties' agreement to continue the hearing. Aplt. App. at 20.

---

[8] We may consider the letter because it is referenced in the complaint, it is central to Ms. Morgan's claim, and the parties do not dispute its authenticity. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

16

The amended complaint further alleges that defendants "fraudulently and falsely procured a default confirmation of sale judgment order against Mrs. Morgan after agreeing to continue the confirmation proceedings. This was a false, deceptive and misleading misrepresentation[,] which is prohibited under the [FDCPA]." *Id.* at 31. But absent any allegations suggesting there was a "conveying of information regarding a debt," 15 U.S.C. § 1692a(2), the claim is subject to dismissal under Rule 12(b)(6).

### iii. June 29, 2015 Writ of Assistance

Finally, Ms. Morgan's amended complaint alleged that defendants communicated "by serving her with the Writ of Assistance." Aplt. App. at 31.[9] Here again, there are no allegations that the writ conveyed any information regarding a debt or that the sheriff's department conveyed information regarding a debt when they served the writ. Moreover, the writ itself references the property and the sheriff's sale, but it simply directs the "Sheriff to forthwith oust all persons in possession of said real estate." Aplee. Supp. App. at 349. There is no mention of

---

[9] Ms. Morgan likely waived her FDCPA claim based on the sheriff's service of the writ. The only reference to this claim in her opening brief is in its procedural history section, where she vaguely states that she was informed "that she would have to move out of her home via service by the sheriff. This communication occurred at a time when the foreclosure litigation was supposed to be stayed . . . ." Aplt. Br. at 12. This hardly complies with our rules for presenting an appellate argument. *See Bronson*, 500 F.3d at 1104 ("An appellant's opening brief must identify 'appellant's contentions and the reasons for them, with citation to the authorities and parts of the record on which the appellant relies.'" (quoting Fed. R. App. P. 28(a)(8)(A))).

17

any debt, which is perhaps unsurprising, because the sheriff's sale had already occurred. These allegations fail to plausibly state an FDCPA claim.

## III. **CONCLUSION**

The judgment of the district court is affirmed.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge