**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 13, 2019[*]
Decided March 13, 2019

**Before**

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 18-1397

| | |
|---|---|
| PAUL CHATMAN, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Central District of Illinois. |
| | |
| *v.* | No. 1:15-cv-01228 |
| | |
| GREG GOSSETT, et al., | Joe Billy McDade, |
| *Defendants-Appellees.* | *Judge.* |

**O R D E R**

Paul Chatman, an Illinois inmate, sued prison employees under 42 U.S.C. § 1983 for violating his Fourth and Eighth Amendment rights during two strip searches of prison bakery workers who might have hidden yeast and sugar to make alcohol. The district court granted summary judgment for the defendants. It correctly reasoned that

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

no violations occurred because valid penological reasons justified the searches, and no evidence suggested that the searches were designed to harass Chatman, so we affirm.

At the summary-judgment phase, we construe the facts in the light most favorable to the non-moving party, Chatman. *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016). Chatman worked in the prison bakery for five years. During his tenure, some bakery workers began using sugar and yeast to make alcohol, and some appeared inebriated on the job. In response, the warden (a defendant) required guards to strip search bakery workers every day when they left for lunch and at the end of their shift "to locate and dispose of contraband … in order to maintain the safety and security of the facility."

Guards conducted these searches in different ways. Typically, guards took ten inmates at a time into the bathroom, ordered them to remove their clothing, and visually inspected them. Ordinarily, the guards did not require inmates to lift their genitals, bend over, or spread their buttocks. Chatman does not contest the legality of this manner of searching inmates. When defendants Nicholas Conklin and David Bryant, both prison guards, were put in charge of an unscheduled bakery shift, they altered the process for two of the searches. They had not previously searched these bakery workers, and to Chatman it appeared that they did not know the standard approach—they looked "hesitant" and "bewildered."

In their first search, Conklin and Bryant strip searched inmates two at a time, in the foyer of the bakery, which lies between two doors. The inner doors have narrow, rectangular windows about 4 by 20 inches, through which other inmates watched the searches. Chatman found the foyer cold and filthy. It smelled, had fly traps on the ceiling, black mold on the walls, and mice droppings on the floor. Before starting the search, the defendants ordered inmates to remove dirty equipment and lay down cardboard to stand on. The defendants told Chatman to strip, raise his arms, and permit a visual inspection for contraband. They also told him to lift his genitals, bend over, and spread his buttocks. The search lasted five minutes. Besides their commands, the defendants said nothing and did not touch the inmates. (Conklin, Chatman says, had "a smile on his face and [the search] didn't seem like it was bothering him in the least.") After he was searched, Chatman and other inmates had to wait outside, where it was raining, for about 45 minutes until the defendants finished the remaining searches. Chatman says he developed a sore throat that night and had a cough for the next eight days.

The second search occurred a week later and only Conklin conducted it. That day, inmates could choose to be searched in the bathroom or bakery office—Chatman chose the office. The office has big windows, but the blinds were closed when Chatman entered. Conklin called in Chatman and another inmate and told them to undress. While they were taking off their clothes, Conklin opened the blinds and the door so that he could also observe the bakery floor during the search. He then searched Chatman and the other inmate. Chatman does not know if anyone on the floor saw him and does not remember if Conklin told him to bend over and spread his buttocks. Again, Conklin did not touch Chatman. After the search was complete Conklin told the inmates to get dressed, and he dismissed them.

After lodging complaints in the prison, Chatman turned to federal court. He contends that Conklin and Bryant violated his Eighth and Fourth Amendment rights by conducting two searches in an inhumane and harassing manner, and the warden violated those rights by enacting the policy that allowed the searches. The district court granted summary judgment for the defendants. It reasoned that neither search constituted cruel and unusual punishment under the Eighth Amendment, and the defendants did not violate Chatman's privacy rights under the Fourth Amendment.

We review a district court's entry of summary judgment de novo. *Wilson v. Warren Cty.*, 830 F.3d 464, 468 (7th Cir. 2016). We turn to the Eighth Amendment claim first. Chatman maintains that the searches violated his Eighth Amendment rights because both the purpose and manner of the searches were unconstitutional.

Strip searches of prisoners violate the Eighth Amendment if their purpose is "maliciously motivated, unrelated to institutional security, and hence totally without penological justification." *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004) (internal quotation marks and citations omitted). Searches are penologically justified when reasonably related to finding contraband that threatens the safety and security of the prison. *See Peckham v. Wis. Dep't of Corr.*, 141 F.3d 694, 695, 697 (7th Cir. 1998); *Del Raine v. Williford*, 32 F.3d 1024, 1029, 1041 (7th Cir. 1994) (citing *Bell v. Wolfish*, 441 U.S. 520, 550–51 (1979)). The prison presented uncontradicted evidence that the searches were intended to prevent ingredients for alcohol production and consumption from leaving the bakery. Preventing the distribution of intoxicating substances is a valid penological justification. And Chatman has not furnished evidence to support his contention that the purpose of the searches was simply to punish inmates for their alcohol use.

Chatman next argues that the manner in which the two searches were conducted violated the Eighth Amendment. To overcome summary judgment with that argument, Chatman had to furnish evidence suggesting that the defendants conducted the searches "in a harassing manner intended to humiliate and inflict psychological pain." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003).

No evidence would permit a rational jury to find that the defendants intended to harass, humiliate, or psychologically injure Chatman. It is undisputed that the defendants did not touch the inmates, they made no gratuitous or insulting comments, and the searches were not prolonged. Conklin's smile while he searched Chatman is not unconstitutional abuse. *See Del Raine*, 32 F.3d at 1040. Chatman suggests three ways in which the defendants intended to harass him, but none has merit.

First, Chatman argues that the windows exposed him to others, but the searches were not "in public," and the defendants sought to limit exposure. They chose semi-private rooms and searched inmates in groups of two, which respected their privacy. Moreover, we have upheld a strip search that occurred in a public "lobby area," where, like here, the plaintiff presented "no evidence of calculated harassment unrelated to prison needs." *Del Raine*, 32 F.3d at 1040 (internal quotation marks omitted) (citing *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). Second, Chatman argues that the foyer was cold and dirty, and the inmates had to wait in the rain until the searches were over, but he ignores details that eliminate an inference of an intent to harass or humiliate. He concedes that the defendants did not regularly conduct these searches. Because they seemed to find the location for the searches "in haste, under pressure, and … without the luxury of a second chance," a jury could not find an intent to harass or humiliate. *Id.* (quoting *Whitley*, 475 U.S. at 320). Moreover, they removed dirty objects and protected inmates by placing cardboard on the floor. And safety concerns justified keeping the searched inmates separate from the others. (No evidence suggests that the defendants knew that it might rain while those inmates waited.) Third, Chatman contends that a rectal inspection was not justified to look for yeast and sugar. But "it cannot be questioned that the body cavities of prisoners are capable of secreting a surprising array of objects." *Id.* at 1042 (alterations omitted).

Chatman next argues that the strip searches violated his Fourth Amendment privacy rights. But we have said that the Fourth Amendment only protects "prisoners' bodily integrity against unreasonable intrusions *into* their bodies." *King v. McCarty*, 781 F.3d 889, 900 (7th Cir. 2015). Chatman "has not alleged any intrusion into his

body …, so even if we assume such treatment of a convicted prisoner is subject to the Fourth Amendment, he has failed to state a viable claim." *Id.*

In closing, we address two procedural matters. First, Chatman contends that the district court unreasonably denied his requests for counsel. *See Pruitt v. Mote*, 503 F.3d 647 (7th Cir. 2007) (en banc). But in his prison grievances and federal complaint, he showed the district court that he could adequately explain why he thought the searches were unconstitutional. Given the straightforward nature of the claim as measured against his demonstrated abilities to litigate it, the district court did not abuse its discretion in denying Chatman's request for counsel. *See id.* at 654–56.

Second, Chatman argues that the district court erred in denying his discovery motions. He asked the district court to order the defendants to provide photographs of the foyer and office that he could use at trial. The court reasonably responded that the case was not set for trial and that Chatman could describe the area in response to a summary-judgment motion, which he later did. "Trial courts retain broad discretion to limit and manage discovery under Rule 26 of the civil rules." *Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 365 (7th Cir. 2017) (internal alterations omitted). Because Chatman could describe the locations at issue, the judge's denial was permissible. Chatman also asked the court to order the defendants to turn over Conklin's and Bryant's performance records. But this filing violated Federal Rule of Civil Procedure 34(a)(1)(A) because Chatman sent it to the court and not the defendants, and he did not explain why he could not follow the proper procedure. So the court appropriately struck it. To the extent that this filing could be construed as a motion to compel, Chatman did not submit the requisite certification. *See* FED. R. CIV. P. 37(a)(1). We have considered Chatman's remaining arguments, and none has merit.

AFFIRMED