**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 23, 2019[*]
Decided April 26, 2019

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 18-2313

| | |
|---|---|
| ANTHONY W. REED, <br>     *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Indiana, Terre Haute Division. |
| *v.* | No. 2:16-cv-00319-WTL-DLP |
| MARK J. BOWEN, *et al.*, <br>     *Defendants-Appellees*. | William T. Lawrence, <br> *Judge*. |

**O R D E R**

Anthony Reed contends in this suit under 42 U.S.C. § 1983 that while he was at an Indiana jail, his jailers violated his constitutional rights by putting three inmates in a cell meant for two and feeding him unhealthy food. Reed also alleges that a jail official retaliated against him when he threatened to sue. At screening, the district court dismissed Reed's claim about the jail's unhealthy food, but allowed him to proceed on his claims about triple-celling and retaliation. Later, it entered summary judgment for

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

the defendants. Because the district court applied the wrong test to evaluate Reed's claims about triple-celling and food, and factual questions are in genuine dispute, we vacate the judgment in part and remand on those two claims, but otherwise affirm.

We begin with the allegations about food. Because the district court dismissed this claim at screening, we take the allegations as true and draw reasonable inferences in Reed's favor. *Wilson v. Warren Cty.*, 830 F.3d 464, 467 (7th Cir. 2016). Reed alleges that the food at Hamilton County Jail lacked nutrients and was unhealthy. For breakfast, he received only sugary foods—muffins, cereal bars, or pop-tarts; for lunch, a "hot" meal that was served cold; for dinner, cold, sometimes frozen, sandwiches; and overall, very few fruits or vegetables. He said that, because he was not allowed to exercise, this diet gave him headaches, high-blood pressure, and dizzy spells. When he complained, jail officials told him that "if [he] did not like" the food, he should not have come to jail.

The claims about triple-celling and retaliation come next. Because the court decided these at summary judgment, we do not rely on allegations, but construe the record in the light most favorable to Reed. *See Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016). Reed was an inmate for over two years at the jail. The jail's population includes both pretrial detainees and convicted prisoners. (Reed entered the jail as a detainee; the record does not reflect when his status changed to prisoner.) According to jail officials, to promote safety within the jail, they celled together inmates with the same security classification. This policy led to putting three inmates in a cell designed for two. When prisoners and pretrial detainees are "triple-celled," two sleep in bunks and the third sleeps on a mattress on the floor.

Reed was triple-celled for 51 (nonconsecutive) days and was let out of his cell no more than 4 hours per day. The floor of each three-inmate cell ranged from 74 to 80.5 square feet. With bunks, a table and chairs, and toilet occupying about 27 square feet, each inmate had at most 18 square feet (equivalent to 6 feet by 3 feet) to himself. And when someone slept on the mattress, it covered the entire floor, eliminating all free space. The cramped quarters took their toll on Reed. He developed "an intense itching" on his face from the cell's crowded and dirty conditions. He could not clean the filth that his crowded cells generated because the cleaning products that the officials supplied were, he said, too diluted. Reed complained about these conditions to no avail. Jail officials respond that they have no record that he complained about itching to medical staff. They add that while Reed was at the jail, cleaning supplies were diluted in accordance with the manufacture's instructions, the jail's air quality was normal, and overall the facility met their minimum standards for functionality and cleanliness.

When Reed's time at the jail ended, he experienced what he considers retaliation. As Officer Jacob Miller prepared to transport Reed to state prison, Reed told Miller that he was going to sue about conditions at the jail. Miller replied, "We don't care. Go ahead and do what you gotta do." After loading Reed into the transport van, Miller placed a bag containing Reed's legal papers in the front seat and drove to the jail's garage, after which Reed saw a man holding a similar bag. Reed never received his bag after the transport, and he infers that Miller discarded it. Miller maintains that he forgot to drop off Reed's bag at the state prison and later mailed it after realizing his mistake.

This lawsuit followed, raising claims under the First, Eighth, and Fourteenth Amendments. The district court analyzed the unhealthy food and triple-celling claims under only the Eighth Amendment, believing that there is no practical difference "between the standards applicable to pretrial detainees and convicted inmates." Based on this, it dismissed the unhealthy-food claim (and thus refused to allow Reed to add the prison's nutritionist as a defendant), reasoning that the allegations failed to state a claim. The district court later entered summary judgment for the defendants on the triple-celling and retaliation claims. It ruled that the Eighth Amendment did not mandate a minimum amount of square footage, the jail's air quality was satisfactory, the facility was clean, and the cleaning supplies were effective. The court also ruled that the First Amendment retaliation claim failed because Reed offered no evidence that Miller had a retaliatory motive.

On appeal, Reed argues that the court should not have entered summary judgment on his triple-celling claim. We agree. This claim turns on several unresolved fact questions. The one that we address first is how long Reed was a pretrial detainee as opposed to a convicted prisoner at the jail.

As a pretrial detainee, Reed's rights derive from the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015). Although the district court saw no difference between the two, "the Supreme Court has been signaling that courts must pay careful attention to the different status of pretrial detainees." *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). A *detainee's* claim differs from a *prisoner's* because "pretrial detainees (unlike convicted prisoners) cannot be punished at all." *Kingsley*, 135 S. Ct. at 2475. In bringing a conditions-of-confinement claim, a pretrial detainee "can … prevail by showing that the actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in relation to that purpose.'" *Kingsley*, 135 S. Ct. at 2473 (quoting *Bell v. Wolfish*, 441 U.S. 520, 561 (1979)).

The Eighth Amendment is more permissive; it requires only that conditions not cause an "unquestioned and serious deprivation of basic human needs … [or] deprive inmates of the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "[R]estrictive and even harsh" conditions are "part of the penalty that criminal offenders pay for their offenses." *Id.* Moreover, to prevail under the Eighth Amendment, an inmate must also show that officials inflicted these conditions deliberately or recklessly. *See Townsend v. Fuchs,* 522 F.3d 765, 773 (7th Cir. 2008). The district court erred in rejecting Reed's triple-celling claims because it applied the Eighth Amendment to it without resolving when Reed's status changed from detainee to prisoner.

Additional factual questions preclude summary judgment on Reed's triple-celling claim, even for the time that Reed was a convicted prisoner and covered by the Eighth Amendment. The district court ruled that the Eighth Amendment was not violated, in part because it interpreted *Rhodes,* which approved *double*-celling, as not mandating any minimum amount of square footage. But in at least four respects the conditions in *Rhodes* (a "top-flight, first class facility," 452 U.S. at 341) were materially different from the conditions for which Reed has supplied evidence in the record.

The first factual question is space. Two double-celled prisoners in *Rhodes* shared 63 square feet, giving them 31.5 square feet per inmate, *see* 452 U.S. at 341. This is appreciably more than the 24.6 square feet per inmate that Reed received, which ignores the space already occupied by the cell's furnishings. That factual difference may be constitutionally significant. *See French v. Owens*, 777 F.2d 1250, 1252 (7th Cir. 1985) (doubling celling of prisons in cells with 24 square feet per prisoner violated Eighth Amendment); *Smith v. Fairman,* 690 F.2d 122, 123, 125 (1982) (Eighth Amendment claim failed when inmates had 27.5 to 32.5 square feet each).

The second factual difference is time out of the cell. Most of the inmates in *Rhodes* "had the choice of spending much of their waking hours outside their cells, in the dayrooms, school, workshops, library, visits, meals, or showers," 452 U.S. at 341. By contrast, the defendants concede that Reed was allowed only 4 hours out of his cell daily. And at least one circuit has ruled that even *double*-celling pretrial detainees for more than 15 days violates the Fourteenth Amendment. *See Lareau v. Manson*, 651 F.2d 96, 105 (2d Cir. 1981). Reed spent 51 nonconsecutive days triple-celled.

Third, the cells in *Rhodes* "were substantially free of offensive odor," 452 U.S. at 342, while Reed provided evidence that his cells were never properly cleaned and

caused him to itch. In entering summary judgment, the district court relied on the defendant's evidence of the air quality and overall cleanliness of the facility. But given the time that Reed spent confined *within* his cell, and his evidence of that cell's filth and the ineffectiveness of the cleaning solvents, he has presented a triable question whether he suffered a "serious deprivation of basic human needs." *Id.* at 347.

The fourth factual question is the defendants' state of mind—whether they inflicted these conditions deliberately or recklessly—an element of an Eighth Amendment violation. *See Townsend*, 522 F.3d at 773. The district court said that there is "no evidence the defendants['] possessed a reckless state of mind." But Reed has presented evidence that the defendants did nothing to help him even after he notified them about the ill effects that triple-celling had on his health. Such evidence is sufficient to withstand defendants' summary-judgment motion. *See id*. at 774 (prisoner's testimony about his unanswered complaints of harmful conditions was sufficient to survive summary judgment).

Reed next argues that the district court erred when it dismissed at screening his claims about unhealthy food and did not allow him to amend his complaint to add the jail's nutritionist. Again, because the district court analyzed this claim under only the Eighth Amendment, it dismissed this claim prematurely. To the extent that Reed was a detainee, he has adequately alleged that the diet was punitive and therefore inconsistent with the Fourteenth Amendment. *See Bell*, 441 U.S. at 538. He alleged that the jail officials scoffed that "if [he] did not like [the food]," he should not have come to jail, a comment that suggests that they intended the diet to punish him. Reed also alleges that his confinement to a crowded cell for 20 hours a day aggravated the effects of the poor diet. The court needed to assess together the joint effects of these conditions. *See French*, 777 F.2d at 1252 ("totality of conditions of confinement" includes "unwholesome food"). Finally, even under the Eighth Amendment standard, the allegation that Reed complained to no avail about the effects of the unhealthy food on his health is sufficient to state a claim that officials "kn[ew] of and disregard[ed] an excessive risk to [Reed's] health." *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). Thus, dismissal was improper. *See Wilson*, 830 F.3d at 467. So too was the district court's refusal to allow Reed to add the jail's nutritionist as a defendant—the only reason it gave for denying this motion was its view that the unhealthy-food claim was not viable.

That brings us to Reed's challenge to the entry of summary judgment on his First Amendment retaliation claim, in which he contends that Officer Miller discarded his

legal papers because Reed threatened to sue about jail conditions. Here we agree with the district court. Reed needed to furnish evidence that would allow a jury to find that: (1) his threat is protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment speech; and (3) his threat was "at least a motivating factor" for the Miller's response. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)). We have not ruled that threatening to file a lawsuit is protected activity. *See id.* at 555. But even if it is, Reed has not offered sufficient evidence that his threat motivated an adverse response. Miller's statement that "we don't care" if Reed sued does not show animosity—at most it shows indifference. And the suspicious timing of Reed's bag going missing after his move to state prison is insufficient because "suspicious timing will 'rarely be sufficient in and of itself to create a triable issue.'" *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) (quoting *Stone v. Cty of Indianapolis Pub. Utils. Div.,* 281 F.3d 640, 644 (7th Cir. 2002)). Although Reed saw someone in the parking garage holding a bag similar to his, he never saw *his* bag leave the van, so a jury would have to speculate about where his bag went, and speculation is not a rational inference, *see Skiba v. Ill. Cent. R.R.*, 884 F.3d 708, 721 (7th Cir. 2018); *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 841 (7th Cir. 2014). Thus, this claim was properly decided at summary judgment.

One final matter. Reed argues that the court erred in dismissing his claim that the jail officials were deliberately indifferent to the medical problem of his itching face. But Reed's complaint does not raise a stand-alone claim of medical indifference, and in any case we have already addressed it in the context of conditions of confinement.

We AFFIRM in part, VACATE in part, and REMAND to the district court Reed's claims about triple-celling and unhealthy jail food. This district court should recruit counsel for Reed on those claims.